2013 COA 32

**Stanislaw KROL, Plaintiff–Appellant,**

**v.**

**CF & I STEEL, a/k/a CF & I Steel, LP, d/b/a Rocky Mountain Steel Mills, d/b/a RMSM, d/b/a Colorado Steel Mills, d/b/a Pueblo Metals Company, d/b/a CF & I Fabricators, d/b/a Pueblo Railroad Service Company, Defendant–Appellee.**

No. 12CA0226

Colorado Court of Appeals, Div. VII.

Announced March 14, 2013

James M. Croshal, Pueblo, Colorado, for Plaintiff–Appellant

Faegre Baker Daniels LLP, Colin C. Deihl, Denver, Colorado; SNR Denton US LLP, Alan G. Gilbert, Tiffany L. Amlot, Chicago, Illinois, for Defendant–Appellee

Opinion by Judge J. JONES

¶ 1 Plaintiff, Stanislaw Krol, an employee of SK's Industrial Management, LLC (SKIM), sued defendant, CF & I Steel, in tort for injuries he suffered while he was on CF & I's property training a CF & I employee. The district court granted CF & I's motion for summary judgment, concluding that the Workers' Compensation Act of Colorado, sections 8–40–101 to 8–47–209, C.R.S. 2012 (the Act), provided Mr. Krol's exclusive remedy because (1) Mr. Krol was doing work while "on" CF & I's property when he was injured, *see* § 8–41–402, C.R.S.2012; and (2) the training was part of CF & I's regular business, such that CF & I ordinarily would have performed that function itself if it had not contracted it out to SKIM, *see* § 8–41–401, C.R.S.2012.

¶ 2 We conclude that the court erred in entering summary judgment for CF & I. Section 8–41–402 expressly provides that an entity is deemed a statutory employer thereunder only if the injured person did work both "on and to" real property or improvements thereon owned by the purported statutory employer. The district court's ruling that the injured person need only have been "on" the property when he was injured is contrary to the plain language of the statute, from which we see no legally viable reason to depart. There is a question of material fact as to whether Mr. Krol was doing work "to" CF & I's real property (or improvements

thereon), precluding summary judgment based on section 8–41–402.

¶ 3 Summary judgment based on section 8–41–401 is also inappropriate at this stage of the case. CF & I did not raise that statute in moving for summary judgment. The court raised the statute on its own, in the order granting summary judgment, without providing Mr. Krol with any notice or opportunity to present argument and factual evidence relating thereto. That course of action ordinarily is procedurally improper, and we cannot conclude that the court's error in this regard was harmless.

## I. Background

¶ 4 CF & I owns a rail mill in Pueblo, Colorado. It has several industrial cranes on that property, many of which are inside buildings.

¶ 5 In July 2002, CF & I and Alpine Crane entered into a contract obligating Alpine Crane to maintain and inspect CF & I's cranes. In January 2007, however, CF & I and SKIM entered into a contract obligating SKIM to train CF & I's employees to maintain and inspect the cranes, apparently in an effort to save CF & I money it was continuing to pay Alpine Crane.

¶ 6 That month, Mr. Krol went to the mill to provide inspection training as called for by the CF & I–SKIM contract. While Mr. Krol was standing on top of one of the cranes, training a CF & I employee how to inspect a crane, the crane moved. Mr. Krol was injured as a result.

¶ 7 Mr. Krol received workers' compensation benefits through SKIM's workers' compensation insurance. He sued CF & I, asserting various tort claims. Following about a year of litigation, CF & I moved for summary judgment. It did so based solely on section 8–41–402, contending that the undisputed facts established that Mr. Krol was on its property when he was injured; therefore, it was Mr. Krol's "statutory employer"; and therefore, Mr. Krol could not seek additional compensation from CF & I as a matter of law.

¶ 8 Mr. Krol opposed CF & I's summary judgment motion. He did not dispute that he was on CF & I's property when he was injured. But he argued that the express language of section 8–41–402 provides that it applies only when the injured person was doing work both "on and to" another's property, and that there was at least a genuine issue of fact whether he was doing work to CF & I's property when he was injured.

¶ 9 The district court noted the statute's plain language, but ruled that it applies whenever an injured person was doing work while on another entity's property, even if the injured person was not doing work to the property. Because there was no dispute that Mr. Krol was on CF & I's property when he was injured, the court concluded that CF & I was Mr. Krol's statutory employer and was therefore entitled to immunity under section 8–41–402.

¶ 10 The court went on to find (the court said it "also finds") that "training its employees is part of the regular business of [CF & I]," that if CF & I did not contract out that work it would do the work itself, and that SKIM had carried adequate workers' compensation insurance. Citing *Black v. Cabot Petroleum Corp.*, 877 F.2d 822 (10th Cir. 1989), a case involving the predecessor to section 8–41–401, the court granted summary judgment to CF & I on the basis of section 8–41–401 as well.[1]

## II. Standard of Review

¶ 11 We review an order granting summary judgment de novo, applying the same principles that guided the district court's determination. *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 290 (Colo.App.2009). Thus, we will affirm such an order only when the pleadings and supporting documents clearly demonstrate that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo.2008). In considering whether the moving party has ultimately established its

---

1. Though the court did not cite section 8–41–401, the parties agree that the court ruled in CF & I's favor, in the alternative, based on section 8–41–401.

entitlement to summary judgment, we must grant the nonmoving party the benefit of all favorable inferences that reasonably may be drawn from any uncontested facts, and we must resolve any doubts as to whether a triable issue of material fact exists against the moving party. *Lombard,* 187 P.3d at 570.

### III. Section 8–41–402

¶ 12 CF & I relies on subsection (1) of section 8–41–402, which provides in relevant part as follows:

**Repairs to real property—exception for liability of occupant of residential real property.**

(1) Every person, company, or corporation owning any real property or improvements thereon and contracting out *any work done on and to* said property to any contractor, subcontractor, or person who hires or uses employees in the doing of *such work* shall be deemed to be an employer under the terms of articles 40 to 47 of this title. Every such contractor, subcontractor, or person, as well as such contractor's, subcontractor's, and person's employees, shall be deemed to be an employee, and such employer shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said contractor, subcontractor, or person and said employees or employees' dependents and, before commencing said work, shall insure and keep insured all liability as provided in said articles....

(Italicized emphasis added.)

■ ¶ 13 The upshot of this provision, construed with related provisions, is that, if the landowner is a statutory employer thereunder, and the contractor, subcontractor, or person hired to do the work carries workers' compensation insurance covering the injured party's injuries, the injured party is deemed an employee of that statutory employer, and the injured party may not seek damages from the statutory employer. *See* §§ 8–41–102, 8–41–104, 8–41–402(2), C.R.S.2012.

¶ 14 The first question we must answer is whether, as CF & I contends and the district court concluded, an injured person need only have been "on" the landowner's property when performing work for section 8–41–402 to apply, or whether, as Mr. Krol contends, an injured person must have been both on the property and doing work "to" the property for it to apply.

■ ¶ 15 This question presents an issue of statutory interpretation.[2] In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent. *Hassler v. Account Brokers of Larimer Cnty., Inc.,* 2012 CO 24, ¶ 15, 274 P.3d 547; *L & R Exploration Venture v. Grynberg,* 271 P.3d 530, 533 (Colo.App.2011). We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings. *Hassler,* ¶ 15; *L & R Exploration Venture,* 271 P.3d at 533. We read the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language. *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo. 2010); *BP Am. Prod. Co. v. Patterson,* 185 P.3d 811, 813 (Colo.2008). After doing this, if we determine that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1089 (Colo.2011); *Carruthers v. Carrier Access Corp.,* 251 P.3d 1199, 1203 (Colo.App. 2010).

¶ 16 Though CF & I contends that there is "no authority" for interpreting the statute to apply only if the injured person was doing work both "on and to" the property, we cannot help but observe that the statute itself plainly includes such language. § 8–41–402(1) ("any work done on and to said property"). Ordinarily, the use of the word "and" in a statute is intended to be conjunctive—that is, where a statute connects requirements by means of "and," both requirements must be met for the operative provision to apply. *People v. Parcel of Property,* 217 Ill.2d 481,

**2.** Because we review an issue of statutory interpretation de novo, we give no deference to the district court's interpretation. *Associated Gov'ts*

*of Northwest Colo. v. Colo. Pub. Utils. Comm'n,* 2012 CO 28, ¶ 11, 275 P.3d 646.

299 Ill.Dec. 196, 841 N.E.2d 928, 939–40 (Ill. 2005); *see* 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 21:14, at 177–79, 184, 189 (7th ed.2009).[3]

¶ 17 The district court concluded, however, that to require that the injured person have been doing work both while on property of another and to that property would be an "absurd and unreasonable" interpretation of the statute. CF & I argues similarly. We cannot agree.

¶ 18 As the district court noted, there is authority for the proposition that in determining the meaning of "and" and "or" in statutes, the substitution of one for the other is permissible to avoid an absurd or unreasonable result. *E.g., Waneka v. Clyncke,* 134 P.3d 492, 494 (Colo.App.2005), *aff'd,* 157 P.3d 1072 (Colo.2007) (*Clyncke*). But here, the district court's interpretation does not substitute "or" for "and." Typically, when a court reads "and" as "or," some effect is given to both categories or requirements separated by the conjunction. *See, e.g., People v. Smith,* 921 P.2d 80, 82 (Colo.App. 1996); *Smith v. Colo. Dep't of Human Services,* 916 P.2d 1199, 1201 (Colo.App.1996). The district court's construction here does not give any effect to "and to": it reads that phrase entirely out of the statute. The district court's construction renders "to" entirely meaningless because one cannot be doing work to another's real property (or improvements thereon) without being on the property. That construction is therefore inconsistent with the fundamental precept of statutory interpretation that we should seek to give meaning to every word or phrase in a statute. *See Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo.2000); *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 790 P.2d 827, 830 (Colo.1990); *Colorado General Assembly v. Lamm,* 700 P.2d 508, 517 (Colo.1985).

¶ 19 Further, courts have substituted "and" for "or," and vice versa, in recognition that these terms may be used loosely, and that the use of one rather than the other may be inadvertent. *E.g., Waneka,* 134 P.3d at 494 ("Where the word 'and' is used inadvertently and the intent or purpose of the statute seems clearly to require the word 'or,' this is an example of a drafting error which may properly be rectified by a judicial construction.") (quoting Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 21:14, at 188 (6th ed.2002)); *Thomas v. City of Grand Junction,* 13 Colo. App. 80, 84–85, 56 P. 665, 667 (1899); *see also Clyncke,* 157 P.3d at 1079 (Coats, J., concurring in the judgment) (opining that the word "and" is "notoriously ambiguous" and that its meaning must be determined by syntax and context).

¶ 20 We perceive no such inadvertence or mistake here, for three primary reasons.

¶ 21 First, the terms "on" and "to," considered in the statutory context, clearly have different meanings (a point no party disputes).[4] A legislature might use redundant terms inadvertently, but we think it far less likely that a legislature would use two terms with different meanings inadvertently.

¶ 22 Second, the General Assembly employed the phrase on two different occasions, once when it enacted the original version of section 8–41–402 and later when it amended it. The statute was enacted in 1919. Ch. 210, 1919 Colo. Sess. Laws 718–19. The phrase "on and to" was part of that enactment, in what is now subsection (1) of the statute. In 1985, the General Assembly added subsection (3) to section 8–41–402. Ch. 76, sec. 1, 1985 Colo. Sess. Laws 354. Therein, the phrase "on and to" appeared twice.

---

**3.** The authors of *Statutes and Statutory Construction* say that "and" should be given its literal, conjunctive meaning "unless it renders the statute inoperable or the meaning becomes questionable." 1A *Statutes and Statutory Construction* § 21:14, at 184 (7th ed.2009); *see also id.* at 189 ("But ["and" and "or"] are not interchangeable, and their strict meaning should be followed when their accurate reading does not render the sense of the statute confusing and there is no clear legislative intent to have the words not mean what they strictly should.").

**4.** The parties appear to agree that "on," as used here, refers to a status of being located on the property, and is not used in the sense of performing work to the property, as would be the case, for example, when someone is working "on a car."

(Subsection (3) was repealed in 1991. Ch. 219, sec. 8, 1991 Colo. Sess. Laws 1295–96.) In adding subsection (3), the General Assembly passed on the opportunity to broaden the statute's application by omitting "and to" and instead chose to repeat, and thereby reaffirm, the more limiting phrase "on and to." This sequence of events demonstrates a lack of inadvertence.[5]

¶ 23 Third, use of the phrase "and to" is consistent with the overall scheme of the Act. "The primary purpose of the [Act] is to provide a remedy for job-related injuries, without regard to fault.... The statutory scheme grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability." *Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 63 (Colo.1988) (citations omitted); *accord Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973).

¶ 24 The General Assembly has seen fit to include within the ambit of "employer" entities that, under common law, ordinarily would not be considered an injured person's employer. *Finlay*, 764 P.2d at 64. That is not to say, however, that the concept of "statutory employer" (as an employer subject to the insurance liability and immunity provisions of the Act is referred to) includes every entity with some conceivable relationship to an injured person. "To be afforded this immunity, an employer must be a 'statutory employer' as contemplated by the [Act]." *Id.* at 63; *see Doyle v. Missouri Valley Constructors, Inc.*, 288 F.Supp. 121, 123 (D.Colo. 1968) ("While statutory employer provisions have been liberally construed by the courts, it is not every relationship that constitutes a contract within the purview of the Act.") (applying Colorado law); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1264 (Colo.1985); *see also Frohlick Crane Serv.*, 182 Colo. at 38,

510 P.2d at 893 ("[The Act] is not to shield third-party tort-feasors from liability for damages resulting from their negligence.").

¶ 25 Part 4 of article 41 of the Act contains several provisions rendering certain entities who are not "direct" employers of injured persons "statutory employers" within the meaning of the Act. Section 8–41–401, the broadest of those provisions, renders certain entities statutory employers if they contract out their work. But it applies only if the work is part of an entity's regular business, as defined by its total business operation. *Finlay*, 764 P.2d at 66–67; *Humphrey v. Whole Foods Market Rocky Mountain/Southwest, L.P.*, 250 P.3d 706, 709 (Colo. App.2010). In determining whether work is part of the entity's regular business, the court must consider the "routineness, regularity, and the importance of the contracted service to the regular business of the employer." *Finlay*, 764 P.2d at 67. Thus, not every type of work contracted out will render an entity a statutory employer under section 8–41–401: the nature of the work is critical.

¶ 26 A similar limitation applies to section 8–41–403, which limits the application of part 4 when a landowner leases real property to another entity. If the lessee is performing the landowner's regular business, the landowner is a statutory employer for purposes of part 4; but if the lessee is not performing the landowner's regular business, the landowner is not a statutory employer. *See Virginians Heritage Square Co. v. Smith*, 808 P.2d 366, 368–69 (Colo.App.1991); *Bain v. Doyle*, 807 P.2d 1225, 1226–27 (Colo. App.1990); *Rian v. Imperial Mun. Services Group, Inc.*, 768 P.2d 1260, 1262 (Colo.App. 1988); *Standard Oil Co. v. Indus. Comm'n*, 38 Colo.App. 39, 40, 552 P.2d 1029, 1030 (1976). Thus, again, the nature of the work performed is critical.

---

**5.** Mr. Krol also relies on the heading to the statute, which begins "Repairs to real property." But that heading was not part of the statute as originally enacted. A heading first appeared in the section in the 1921 compilation of Colorado Laws, and that heading was different from the current heading. C.L. § 4424 (1921). The current heading first appeared in the 1953 version of the Colorado Revised Statutes. § 81–9–2,

C.R.S.1953. There is no indication the heading was ever added or changed by an act of the General Assembly. Thus, although the current heading supports Mr. Krol's position, we give it no weight. *See* § 2–5–113(4), C.R.S.2012 ("section headings" created by the reviser of statutes are not "part of the legislative text," and "no implication or presumption of legislative construction is to be drawn therefrom").

¶ 27 Section 8–41–404 confers statutory employer status on an entity contracting for the performance of "construction work" on a construction site. The statute defines "construction work" as including "all or any part of the construction, alteration, or remodeling of a structure," but not including "surveying, engineering, examination, or inspection of a construction site or the delivery of materials to a construction site." § 8–41–404(5)(b). Yet again, the nature of the work performed is critical.

¶ 28 It is therefore clear that, in weighing policy interests implicated by extending the burdens and benefits of the Act to entities not traditionally regarded as injured persons' employers, the General Assembly has decided that the nature of the work performed is important, indeed, crucial. Its use of "and to" in section 8–41–402 is entirely consistent with that approach. Statutory employer status thereunder does not turn entirely on the fortuity of an injured party being on another's property, but depends also on what work the injured party was performing while on the property.[6]

¶ 29 The district court posited that reading the statute to require that the injured person have been doing work to the property would be absurd and unreasonable because that would mean, potentially, that immunity from liability would not be available in a variety of circumstances. But we perceive nothing absurd or unreasonable about the General Assembly placing such a limit on the statutory immunity (in return for which, of course, the injured party receives a guarantee of workers' compensation coverage). The statute was enacted to address particular situations, and is consistent with the nature of the work approach reflected in the statutory scheme. We are not free to second-guess that approach. Simply put, the fact the General Assembly could have chosen to apply immunity to a broader set of circumstances does not render its decision not to do so, as expressed by the plain language it chose, absurd or unreasonable.

¶ 30 The cases on which CF & I relies, *Thornbury v. Allen*, 991 P.2d 335 (Colo.App. 1999), and *Schwartz v. Tom Brown, Inc.*, 649 P.2d 733 (Colo.App.1982), are distinguishable. Neither case addressed the issue with which we are faced. Further, in *Thornbury*, the worker was supervising the cleaning of the property. Thus, the worker was involved in doing work "to" the property. 991 P.2d at 337. In *Schwartz*, the worker was operating and maintaining a gas well on the owner's property. 649 P.2d at 734. Such work arguably fits within the statutory meaning of doing work to the property (or improvements thereon).

■ ¶ 31 Therefore, we conclude, consistent with the plain language of section 8–41–402, that it applies only if the injured person was doing work while on the real property of a covered entity and to that real property (or to improvements thereon).

¶ 32 CF & I contends in the alternative that the undisputed facts show that Mr. Krol

---

**6.** CF & I is correct that section 8–41–102, which states the general rule that an employer complying with the Act is not subject to liability, "articulates a legislative decision to establish exclusive as well as comprehensive remedies for injuries that are covered by the Act." *Travelers Ins. Co.*, 706 P.2d at 1264 (applying the predecessor to section 8–41–102). But that policy does not justify disregarding the plain language of section 8–41–402 by reading an operative phrase out of the statute. *See Snyder v. Indus. Comm'n*, 138 Colo. 523, 526, 335 P.2d 543, 545 (1959) (that the Act is to be liberally construed could not justify extending the statutorily expressed meaning of statutory employer beyond its terms); *In re M.D.E.*, 2013 COA 13, ¶ 16 (the principle of liberal construction does not allow a court to interpret a statute to alter its plain meaning). And, of course, reference to that policy begs the question whether an entity qualifies as an employer entitled to immunity, a matter dependent on an entity's ability to show that the relevant facts bring the case within statutorily expressed boundaries. We cannot disregard those boundaries without legislating from the bench, and that is not our role. *See Snyder*, 138 Colo. at 526, 335 P.2d at 545 ("To regard one in [the plaintiff's] status as a statutory employer 'would require judicial legislation.' ... Such 'judicial legislation' would indeed operate as semantic emasculation; it would give an effect contrary to the expressed intention of the section of the Act.") (quoting in part *Colo. Fuel & Iron Co. v. Indus. Comm'n*, 88 Colo. 573, 576, 298 P. 955, 956 (1931)); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate.").

was doing work to its property when he was injured. The district court did not rule on this issue. Though we may affirm a court's judgment on any ground supported by the record, *Barnett v. Elite Props. of America, Inc.,* 252 P.3d 14, 23 (Colo.App.2010); *Zweygardt v. Bd. of Cnty. Comm'rs,* 190 P.3d 848, 851 (Colo.App.2008), we are not persuaded that summary judgment on this basis is appropriate, on the record before us. There appears to be at least a factual question as to the nature of the work Mr. Krol was performing pursuant to SKIM's contract with CF & I.

¶ 33 Accordingly, we conclude that the district court erred in granting summary judgment for CF & I based on section 8–41–402.

### IV. Section 8–41–401

■ ¶ 34 We also conclude that the district court erred in granting summary judgment for CF & I based on section 8–41–401. As discussed, that statute provides immunity when, as relevant here, the work contracted out by the entity sought to be held liable is part of that entity's regular business, as defined by its total business operation. *Finlay,* 764 P.2d at 66–67; *Humphrey,* 250 P.3d at 709. And in applying this test, a court must consider the "routineness, regularity, and the importance of the contracted service to the regular business of the employer." *Finlay,* 764 P.2d at 67.

¶ 35 As noted, the district court granted summary judgment for CF & I based on section 8–41–401 even though CF & I had not raised that statute. Under the circumstances here, we conclude that the court erred.

¶ 36 So far as we can tell, no Colorado appellate court has addressed directly whether a district court has authority to grant summary judgment for a moving party for a reason that party has not raised. Federal courts have held that a court has such inher-

ent authority. *See, e.g., Kannady v. City of Kiowa,* 590 F.3d 1161, 1170 (10th Cir.2010); *Imaging Bus. Machines, LLC v. BancTec, Inc.,* 459 F.3d 1186, 1191 (11th Cir.2006); *F.D.I.C. v. Grupo Girod Corp.,* 869 F.2d 15, 17 (1st Cir.1989); *Ware v. Trailer Mart, Inc.,* 623 F.2d 1150, 1154 (6th Cir.1980). But those courts have also held that a court should not do so without giving notice to the parties of its intent to consider an issue sua sponte sufficient to provide the parties with an opportunity to argue the issue and present evidence bearing on the existence of a genuine issue of material fact. *See, e.g., Imaging Bus. Machines,* 459 F.3d at 1191; *Schwan–Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.,* 401 F.3d 28, 33 (2d Cir.2005); *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n,* 873 F.2d 731, 735 (4th Cir.1989); *Ware,* 623 F.2d at 1154; *see generally* 11 James Wm. Moore, *Moore's Federal Practice* § 56.71[4] (3d ed.2012).[7]

¶ 37 In *Wallman v. Kelley,* 976 P.2d 330 (Colo.App.1998), a division of this court held that the district court had erred in granting summary judgment for a reason the movants had first raised in their reply brief supporting their summary judgment motion. *Id.* at 331–32. The division held that the nonmoving party must be put on notice of the need to present evidence concerning the issue. *Id.* at 332. In support, the division cited *Jefferson Cnty. Sch. Dist. R-1 v. Justus,* 725 P.2d 767, 773 (Colo.1986), in which the court declined to affirm a summary judgment for a reason the moving party had first raised in its supreme court briefs.

■ ¶ 38 In accordance with these authorities, we conclude that while a court may grant summary judgment for a reason not raised by the moving party, it should not do so without first giving the parties notice and reasonable opportunity to argue the issue and present evidence relevant to the existence of a genuine issue of material fact. This rule is consistent with notions of fairness and judicial impartiality. It also recog-

---

7. In 2010, Fed.R.Civ.P. 56 was amended to provide, consistent with then-prevailing federal court jurisprudence, that a court may grant summary judgment on grounds not raised by the moving party, or may consider summary judgment on its own, "[a]fter giving notice and a reasonable time to respond...." Fed.R.Civ.P. 56(f). Our C.R.C.P. 56 is very similar to Fed.

R.Civ.P. 56, as the federal rule was worded before amendments in 2010. Thus, we may look to federal court decisions applying the former version of the federal rule in determining how to apply the Colorado rule. *See Garcia v. Schneider Energy Services, Inc.,* 2012 CO 62, ¶ 10, 287 P.3d 112; *Garrigan v. Bowen,* 243 P.3d 231, 235 (Colo.2010).

nizes that decision-making is improved when the parties are able to make the court aware of all relevant information. And requiring such notice and opportunity avoids placing the nonmoving party in an untenable situation. As one court has said:

> When a party moves for summary judgment on ground A, the opposing party need not address grounds B, C, and so on; the number of potential grounds for (and arguments against) summary judgment may be large, and litigation is costly enough without requiring parties to respond to issues that have not been raised on pain of forfeiting their position.

*Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir.1990).

¶ 39 By failing to provide Mr. Krol with notice that it was considering granting summary judgment based on section 8–41–401, the district court erred. Though there may be situations in which such an error is not prejudicial, *see Kannady*, 590 F.3d at 1170, we cannot say that this case presents one of those situations. The issues implicated by sections 8–41–402 and 8–41–401 are different, at least in this case. And Mr. Krol did not have any opportunity to present evidence pertaining to the facts relevant to the application of section 8–41–401. Among those facts are the scope of CF & I's total business operation, and, more specifically, the routineness, regularity, and importance of the training service provided by SKIM and Mr. Krol. *See Finlay*, 764 P.2d at 67. We also note that divisions of this court have held on several occasions that the question whether an entity is a statutory employer under section 8–41–401 ordinarily is one of fact. *Humphrey*, 250 P.3d at 708; *Thornbury*, 991 P.2d at 339. Mr. Krol should have the opportunity to demonstrate, if he can, that there is a genuine issue about that factual question.

¶ 40 The judgment is reversed. The case is remanded for further proceedings.

Judge BERNARD and Judge RICHMAN concur.