COLORADO COURT OF APPEALS                                   **2017COA16**

Court of Appeals No. 16CA0723
Eagle County District Court No. 15CV30255
Honorable Russell H. Granger, Judge

Traer Creek-EXWMT LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

Eagle County Board of Equalization,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE J. JONES
Dailey and Berger, JJ., concur

Announced February 9, 2017

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Dimitri Adloff, David P. Hutchinson, Denver, Colorado, for Plaintiff-Appellant

Bryan Treu, County Attorney, Christina Hooper, Assistant County Attorney, Eagle, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Traer Creek-EXWMT LLC (Traer), appeals the district court's judgment dismissing its claims against defendant, Eagle County Board of Equalization (the Board), for lack of standing. Because we conclude that a mere lessee of property (such as Traer) does not have standing to challenge a property tax valuation of property that includes the leased property, we affirm.

## I.  Background

¶ 2    This appeal concerns the property tax valuation of Chapel Square Subdivision Tract B-1 (Tract B) for the tax year 2015.  Tract B is a parcel of land that has a commercial retail building on it. Tract B has been subject to a lease since 1987, and since 2002 Traer has been the lessee.[1]  Under a "Declaration of Easements," Traer is contractually obligated to pay the property taxes "directly to the appropriate taxing authorities."  But since assuming the lease, Traer has not paid the property taxes directly to the taxing authority; the owner has made those payments and Traer has reimbursed the owner.

---

[1] The parties appear to dispute whether the lease covers all of Tract B, but we do not need to resolve that dispute.

¶ 3    On May 1, 2015, the Eagle County Assessor mailed the owner a notice of valuation regarding Tract B.  Traer (but not the owner) initiated the statutory protest and adjustment process to challenge the 2015 valuation of Tract B.  The assessor issued a notice of determination declining to adjust the valuation.

¶ 4    Traer appealed the notice of determination to the Board.  The Board upheld the valuation.

¶ 5    Undaunted, Traer appealed the Board's decision to district court pursuant to section 39-8-108, C.R.S. 2016.[2]

¶ 6    The Board moved to dismiss under C.R.C.P. 12(b)(1) on the theory that a mere lessee does not have standing to challenge a property tax valuation of the sort issued by the assessor.  The district court agreed and dismissed the case.

## II.  Discussion

¶ 7    Traer contends that the district court erred in ruling that it does not have statutory or common law standing, and that factual

---

[2] Traer joined CSB Properties Holdings LLC, one of the owners, as a defendant because CSB declined to join as a plaintiff.  CSB did not file an answer or other pleadings, and the district court entered a "clerk's default" against CSB.

determinations underlying the court's ruling are incorrect.  We address and reject each contention in turn.

## A.  Statutory Standing

### 1.  Standard of Review and Applicable Law

¶ 8      We review questions of standing and statutory interpretation de novo.  *1405 Hotel, LLC v. Colo. Econ. Dev. Comm'n*, 2015 COA 127, ¶ 36; *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15 n.2.

¶ 9      Our primary goals in interpreting a statute are to discern and give effect to the General Assembly's intent.  *Krol*, ¶ 15.

> We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings.  We read the language in the dual contexts of the statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language.

*Id.* (citation omitted).

### 2.  Analysis

¶ 10      Traer argues that because it "owns" an interest in property — albeit a leasehold interest — it has standing under the statutory scheme to object to and protest a valuation.  To show why Traer is wrong, we walk through the objection and protest process laid out by the applicable statutes, beginning with the notice of valuation.

3

¶ 11 Section 39-5-121(1)(a)(I), C.R.S. 2016, provides that "the assessor shall mail to each person who owns land or improvements a notice setting forth the valuation of such land or improvements." When the valuation in question concerns the fee interest in real property, the statutory phrase "owns land" is most naturally understood as referring to a fee owner, not someone with a mere leasehold interest in property.  Thus, only the fee owner of real property need be notified of a tax valuation of that owner's real property.

¶ 12 This understanding of owner in this context is confirmed by section 39-5-102(1), C.R.S. 2016, which says that "[o]wnership of real property shall be ascertained by the assessor from the records of the county clerk and recorder."  Such records typically identify fee owners, but not necessarily lessees.[3]  And this understanding also makes sense in light of the fact that only fee owners of real property are liable *to the taxing authority* for taxes assessed pursuant to a valuation of real property.  *See Cantina Grill, JV v.*

---

[3] Traer notes that the Declaration of Easements describing the lessee's tax obligation was recorded in the county land records. However, this document was not recorded to demonstrate ownership, and Traer is not mentioned in the document.

*City & Cty. of Denver Cty. Bd. of Equalization*, 2015 CO 15, ¶ 20 (even if there are taxable interests in property that are less than fee ownership, the property is taxed to the fee owner).

¶ 13    Section 39-5-122(1)(a), C.R.S. 2016, outlines the "[t]axpayer's remedies to correct errors" after valuation.  It reads in relevant part that

> after notices of adjusted valuation are mailed to taxpayers, the assessor will sit to hear all objections and protests concerning valuations of taxable real property determined by the assessor for the current year; [and] that, for a taxpayer's objection and protest to be heard, notice must be given to the assessor.

The reference to "notices . . . mailed to taxpayers" clearly refers to the notices mailed pursuant to section 39-5-121(1)(a)(I).  Since those notices are, with respect to real property, mailed to owners, and "owners" in this context means fee owners, "taxpayers" as used in section 39-5-122(1)(a) means those fee owners to whom the assessor sent notices.

¶ 14    Under subsection (2) of section 39-5-122, "[i]f any person is of the opinion that his or her property has been valued too high, . . . he or she may appear before the assessor and object."  Considered in conjunction with subsection (1), a "person" referred to in

subsection (2) is a "taxpayer." And as discussed, a taxpayer to whom a notice of valuation of real property has been sent is a fee owner. At least this is so when the valuation is of the fee interest in the land, as it was in this case, for the objection may be made only as to the "property" that "has been valued." An assessor values real property as a whole, regardless of any leasehold interests in the property, and the fee owner is responsible for paying the tax. *Cantina Grill,* ¶ 20.

¶ 15    Thus far, therefore, this much is clear: the fee owner is the only party given statutory standing to object to and protest the assessor's valuation of real property in fee. And once the assessor decides such an objection and protest, the statutes governing further review of that decision make clear that they do not expand the class of persons with standing.

¶ 16    Under section 39-8-106, C.R.S. 2016, the county board of equalization must "hear petitions from any person whose objections or protests have been refused or denied by the assessor." The "person" referred to in this section is plainly the "person" who had standing to first object to and protest the valuation with the assessor under section 39-5-122. If "the petitioner's" petition is

denied by the board, section 39-8-108 allows "the petitioner" to appeal that denial. The "petitioner" is the "person" who filed the petition under section 39-8-106; that "person" is the "taxpayer" who objected under section 39-5-122; and that "taxpayer" is, in turn, the owner who received the notice of valuation pursuant to section 39-5-121. *See Tenney v. Bd. of Assessment Appeals*, 856 P.2d 89, 91 (Colo. App. 1993) ("[T]he term 'petitioner,' as used in these statutes, has been interpreted as meaning the taxpayer for the property.").

¶ 17     In sum, the relevant statutes expressly limit the right of review in this context to a property owner to whom a notice of valuation is sent as required by statute. "[W]hen a statute creates a cause of action and designates those who may sue under it, none except those designated may sue," and "we are without authority to expand [that class]." *Berry Props. v. City of Commerce City*, 667 P.2d 247, 249 (Colo. App. 1983); *see Tenney*, 856 P.2d at 90 ("If a statute designates those who may bring an action, only those parties so designated have standing to do so.").

¶ 18     We are not persuaded to the contrary by Traer's argument that because section 39-1-102(16), C.R.S. 2016, defines "taxable

7

property" as including "all property, real or personal, not expressly exempted from taxation by law," and since section 39-1-102(14) defines "real property" as including "all . . . interests in lands," it may challenge any assessment relating to the underlying property under section 39-5-122. Even if Traer is a "person" as that term is defined in section 39-1-102(9), it is not a person whose "property has been valued too high." § 39-5-122(2). The assessor did not separately value Traer's alleged "property" — its leasehold interest; the assessor valued the fee ownership interest in the property. Traer does not have such an interest.

¶ 19    Traer's reliance on cases addressing abatement and refund proceedings[4] is equally misplaced. Traer is not seeking a tax abatement and refund — a process that occurs after the property tax is paid. Rather, Traer seeks to protest and adjust the property valuation, which is a procedure that occurs before the tax is paid.

---

[4] *See Hughey v. Jefferson Cty. Bd. of Comm'rs*, 921 P.2d 76, 79 (Colo. App. 1996) (purchaser of a tax lien did not have standing to petition for abatement); *Wyler/Pebble Creek Ranch v. Colo. Bd. of Assessment Appeals*, 883 P.2d 597 (Colo. App. 1994) (taxpayer sought abatement); *Telluride Reg'l Airport Auth. v. Bd. of Equalization*, 789 P.2d 201 (Colo. App. 1989) (lessee had standing to petition for abatement under § 39-9-108); *Gunnison Cty. v. Bd. of Assessment Appeals*, 693 P.2d 400 (Colo. App. 1984) (county sought property tax abatement).

These two procedures are not identical as "[t]he protest and adjustment procedures and the abatement and refund procedures are separate and independent administrative procedures for the adjudication of property tax disputes which are governed by different statutes." *Wyler/Pebble Creek Ranch v. Colo. Bd. of Assessment Appeals*, 883 P.2d 597, 599 (Colo. App. 1994); *see Huerfano Cty. Bd. of Cty. Comm'rs v. Atl. Richfield Co.*, 976 P.2d 893, 896 (Colo. App. 1999) (same).

¶ 20     Therefore, based on the plain language in the statutes governing valuation protest and adjustment, we conclude that the district court did not err in ruling that Traer lacks standing to challenge the valuation of Tract B.

## B. Common Law Standing

¶ 21     Traer contends that it has standing under common law principles because it pays the taxes on Tract B, and because the land owner granted it agency authority to challenge the valuation.

¶ 22     Traer's contention falters at the outset because when a statute limits standing to bring a particular kind of action, a court may not effectively disregard that limitation by employing notions of common law standing. *Tenney*, 856 P.2d at 90; *Berry Props.*, 667

P.2d at 249. As discussed, the relevant statutes deny Traer standing.[5]

## C. Factual Findings

¶ 23    Traer contends that the district court improperly adopted the Board's factual assertions regarding the amount of space Traer leases and the amount of tax liability for which Traer is directly responsible under the Declaration of Easements. But the amount of leased space and Traer's liability to the owner are irrelevant to the question of standing under the governing statutes. So any error as to those facts is harmless. *See* C.R.C.P. 61.

## III. Conclusion

¶ 24    The judgment is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.

---

[5] We also observe that the letter allegedly granting Traer agency authority is not typed on letterhead, and it is unclear who signed the letter as the signature is illegible and there is no printed signature. Further, the property was owned by two separate entities during tax year 2015, and Traer has never claimed to have permission from CSB to appeal the valuation. In fact, CSB has been unresponsive through the valuation appeal process. Traer joined CSB as a co-defendant in this case. We will not interpret CSB's unresponsiveness as granting Traer authority to act as its agent.