COLORADO COURT OF APPEALS                                        **2017COA19**

Court of Appeals No. 15CA1776
Pitkin County District Court No. 10CV201
Honorable Denise K. Lynch, Judge
Honorable Gail H. Nichols, Judge

Robert A. Francis, as Trustee of the Judi B. Francis Irrevocable Trust, and as
Trustee of the Robert A. Francis Irrevocable Family Trust; Judi B. Francis, as
Trustee of the J. Lee Browning Belize Trust; Leslee K. Francis; Judi B. Francis
Irrevocable Trust; Robert A. Francis Irrevocable Family Trust; and J. Lee
Browning Belize Trust,

Plaintiffs-Appellants,

v.

Aspen Mountain Condominium Association, Inc., a Colorado not for profit
corporation; Donald Miller, in his capacity as member of the Board of Directors
of the Aspen Mountain Condominium Association; Steve Daubenmier, in his
capacity as member of the Board of Directors of the Aspen Mountain
Condominium Association; and Bruce Lynton, in his capacity as member of the
Board of Directors of the Aspen Mountain Condominium Association,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TERRY
Loeb, C.J., and Furman, J., concur

Announced February 23, 2017

George M. Allen, Telluride, Colorado, for Plaintiffs-Appellants

John M. Lassalett, P.C., John M. Lassalett, Aspen, Colorado; Younge &
Hockensmith, P.C., Benjamin M. Wegener, Grand Junction, Colorado, for
Defendants-Appellees

¶ 1    The Francis parties — multiple trusts and their fiduciaries, as well as other individuals with an ownership interest in Unit 1-A of the Aspen Mountain Condominiums — appeal several trial court orders and a judgment of foreclosure in favor of the Aspen Mountain Condominium Association, Inc.; and various other persons in their capacity as board members of the Association (collectively referred to as AMCA).

¶ 2    As an issue of first impression, we consider and reject AMCA's proposed limitations on the holding of *DA Mountain Rentals, LLC v. Lodge at Lionshead Phase III Condominium Ass'n*, 2016 COA 141. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

## I. Background

¶ 3    The parties' dispute began with a contested 2010 vote that amended the original 1972 condominium declaration to reallocate the common interest shares and common expenses. The 1972 declaration had originally allocated common interest shares and common expenses based on unit size, and as owners of Unit 1-A, one of the smaller units, the Francis parties saw their common expenses increase when the amended declaration reallocated

1

common interest shares equally among all units. The Francis parties cast the only vote against the amended declaration. Two lawsuits arose out of AMCA's approval of the amended declaration. The first, filed by the Francis parties, sought a judgment voiding the reallocation of the common interest shares. After AMCA filed the second suit to recover unpaid assessments and foreclose on the unit, the court consolidated the cases.

¶ 4    Following extensive litigation, the trial court ruled in favor of AMCA, finding that the 2010 amendment had been properly adopted. The court also entered a decree of judicial foreclosure against Unit 1-A based on the default in payments of the increased assessments due under the new declaration.

## II.  Impact of CCIOA on the 1972 Declaration

¶ 5    The Francis parties first contend that the trial court erred by partially granting AMCA's motion for a determination of law. The court held that the Colorado Common Interest Ownership Act (CCIOA), sections 38-33.3-101 to -402, C.R.S. 2016, which went into effect in 1992, Ch. 283, sec. 2, 1991 Colo. Sess. Laws 1757, nullified the 1972 declaration's requirement of a unanimous vote to

alter ownership interests in the common elements.  We agree that this ruling was in error.

## A.  Preservation

¶ 6     AMCA asserts that this issue was not preserved for our review because the trial court struck as untimely the Francis parties' brief contesting AMCA's motion for a determination of law as to application of the 67% voting threshold.  We disagree.  Because this issue of law was raised and was ruled on by the trial court, it is ripe for appellate review.

## B.  Standards of Review

¶ 7     When a motion is filed under C.R.C.P. 56(h), a district court may enter an order deciding a legal question "[i]f there is no genuine issue of any material fact necessary for the determination of the question of law."  We review a court's ruling on such a motion de novo.  *Coffman v. Williamson*, 2015 CO 35, ¶ 12.

¶ 8     In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent.  *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15.  We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings.  *Id.*  We read the language in the dual contexts of the

statute as a whole and the comprehensive statutory scheme, giving consistent, harmonious, and sensible effect to all of the statute's language. *Id.* After doing this, if we determine that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. *Id.*

¶ 9 We also interpret the terms of a condominium declaration de novo, giving terms their plain and ordinary meanings; if the terms are clear and unambiguous, we will enforce them as written. *Vista Ridge Master Homeowners Ass'n v. Arcadia Holdings at Vista Ridge, LLC,* 2013 COA 26, ¶ 18.

### C. The Original Condominium Declaration

¶ 10 Paragraph 28 of the 1972 declaration states, "the percentage of the undivided interest in the general common elements appurtenant to each apartment unit . . . shall have a permanent character and shall not be altered without the consent of all of the condominium unit owners as expressed in a duly recorded amendment to this Declaration." Thus, the declaration required a unanimous vote in order to alter the percentage of the undivided interests in the general common elements.

## D. CCIOA's Impact on the Unanimity Requirement

¶ 11    AMCA asserts that a provision of CCIOA, section 38-33.3-217(1)(a)(I), C.R.S. 2016, retroactively lowered the voting threshold for amending declarations to 67% and thus superseded the original declaration's unanimity requirement.  However, this reading of the statute ignores another statutory provision that controls here.

¶ 12    Because the Aspen Mountain Condominiums are a common interest community created before 1992, only certain enumerated provisions of CCIOA apply to the condominium association.  §§ 38-33.3-117(1), (1.5), C.R.S. 2016.  Section 38-33.3-117(1.5) applies section 38-33.3-217(1), "Amendment of declaration," to existing communities for events occurring on and after January 1, 2006.  As a result, the amendment provision applied to AMCA at the time of the 2010 vote amending the declaration.

¶ 13    In general, section 38-33.3-217(1)(a)(I) lowers the voting threshold for amending a declaration by providing as follows:

> [T]he declaration . . . may be amended only by the affirmative vote or agreement of unit owners of units to which more than fifty percent of the votes in the association are allocated or any larger percentage, not to

5

> exceed sixty-seven percent, that the
> declaration specifies. *Any provision in the*
> *declaration that purports to specify a*
> *percentage larger than sixty-seven percent is*
> *hereby declared void as contrary to public*
> *policy, and until amended, such provision shall*
> *be deemed to specify a percentage of sixty-*
> *seven percent.*

(Emphasis added.)

¶ 14    Yet, a further reading of section 38-33.3-217(1)(a)(I) reveals an exception to the new 67% threshold. *See DA Mountain Rentals,* ¶ 33. The first sentence of 38-33.3-217(1)(a)(I) provides that its provisions apply "[e]xcept as otherwise provided in subparagraphs (II) and (III) of this paragraph (a)." Subparagraph (III) states that paragraph (a) shall not apply "[t]o the extent that its application is limited by subsection (4) of this section." § 38-33.3-217(1)(a)(III)(A).

¶ 15    Subsection (4)(a) carves out an exception, validating an original declaration's requirement of a unanimous vote to alter common interests. That subsection provides:

> Except to the extent expressly permitted or
> required by other provisions of this article, no
> amendment may . . . *change* the boundaries of
> any unit or *the allocated interests of a unit* in
> the absence of a vote or agreement of unit
> owners of units to which *at least sixty-seven*
> *percent of the votes in the association . . .* are

6

> allocated *or any larger percentage the*
> *declaration specifies.*

(Emphasis added.) The phrase, "or any larger percentage the declaration specifies," recognizes the continued validity of any pre-CCIOA declaration requirement for a voting threshold in excess of 67% in order to change the allocated interest of a unit. *DA Mountain Rentals*, ¶ 33. We agree with the reasoning of the division in *DA Mountain Rentals*, and we apply it here.

¶ 16     In doing so, we reject the argument that because the condominium association was created before CCIOA was enacted, it has never been subject to the provisions of section 38-33.3-217(4). AMCA contends that section 38-33.3-117(1.5)(d) applies subsection (1) of section 38-33.3-217 to pre-existing communities, and that subsection (4) is not among the subsections that apply to such communities. Because this argument disregards applicable statutory provisions, we reject it.

¶ 17     As noted, the legislature made section 38-33.3-217(1) applicable to pre-existing communities. And subsection (1)(a)(III)(A) — a part of the section that imposes the 67% limitation — limits the application of paragraph (a) "[t]o the extent that its application is

7

limited by subsection (4)." Because subsection (4) is specifically referenced in subsection (1), subsection (4) provisions are *also* applicable to communities that predate CCIOA for purposes of determining whether an "amendment may create or increase special declarant rights, increase the number of units, or change the boundaries of any unit or the allocated interests of a unit." § 38-33.3-217(4)(a).

¶ 18 AMCA further contends that maintaining a unanimous voting requirement to reallocate common elements defies CCIOA's pronouncement that declaration provisions requiring voting percentages higher than 67% are "void as contrary to public policy," § 38-33.3-217(1)(a)(I), and thwarts its stated legislative goals of providing flexibility and "effective and efficient property management," § 38-33.3-102, C.R.S. 2016. AMCA asserts that, by allowing a single owner to veto declaration amendments, such a unanimous voting requirement would render section 38-33.3-217(1)'s lower 67% threshold meaningless. We reject these contentions.

¶ 19 We note that the language of subsection (1)(a)(I) addresses amendment of a declaration, including plats and maps. Subsection (4)(a) deals much more specifically with changes in property rights.

¶ 20 The legislature apparently reasoned that for voting on matters of such property rights — changing allocated ownership interests in a unit, modifying unit boundaries, increasing the number of units, or modifying special declarant rights — a voting threshold of 67% would be sufficient *unless* the original declaration requires a higher voting percentage, and that where the original declaration *does* require a vote of more than 67% to change such interests, that requirement does not violate public policy and will be enforced. This reading is supported by the words "at least" in subsection (4)(a): by specifying that no amendment can change such interests in the absence of a vote of "at least" 67% of the votes of the association, the statute contemplates that 67% is not the maximum allowed threshold voting requirement. Such alterations of property interests are much more consequential than the goals of efficiency and flexibility that are deemed sufficiently protected by the 67% threshold referenced in subsection (1)(a)(I). The various CCIOA provisions indicate the legislature's public policy determinations. It

is the province of the legislature to enact laws to effectuate public policy, and absent constitutional infringement, we will not construe statutes in a manner that changes the enacted policy initiatives. *Bunch v. Indus. Claim Appeals Office*, 148 P.3d 381, 385 (Colo. App. 2006).

¶ 21 The Francis parties also argue that if we were to read the 67% threshold to apply to *all* votes relating to declarations and property interests, then the statutory language, "or any larger percentage the declaration specifies" in subsection (4)(a) would be rendered superfluous. We agree. We will not read a statute in a manner that renders any of its provisions superfluous. *Avalanche Indus., Inc. v. Indus. Claim Appeals Office*, 166 P.3d 147, 152 (Colo. App. 2007), *aff'd*, 198 P.3d 589 (Colo. 2008).

¶ 22 AMCA contends that nothing in subsection (4) is applicable to communities that predated CCIOA's enactment, and that subsection (4) applies only to communities created after enactment. If we were to read subsection (4) to apply only to post-CCIOA communities, then pre-CCIOA communities would not be subject to the higher vote threshold specified in the original declaration to change allocated interests in common areas, but post-CCIOA

communities could be subject to such a higher vote threshold if such a higher threshold is specified in the declaration. We see no basis in the statute for such disparate results.

¶ 23    We conclude that subsection (4)(a) is applicable to communities that predated CCIOA's enactment. Under the facts presented here, that subsection controls over the 67% provision of subsection (1)(a)(I). Thus, CCIOA did not invalidate the 1972 declaration's requirement of unanimous consent to reallocate the percentage of the common interests. As a result, the trial court's ruling in favor of AMCA — declaring that the 2010 vote reallocating the common interests was valid — was erroneous as a matter of law, and we reverse that ruling.

### III. Denial of Leave to Amend Complaint

¶ 24    The Francis parties also contend that the trial court erred in denying their motion for leave to amend the complaint to assert additional breach of fiduciary duty claims against AMCA. We disagree.

### A. Standard of Review and Applicable Law

¶ 25    Leave to amend a pleading is within the trial court's discretion, and absent an abuse of such discretion, we will not disturb the trial

court's ruling.  *Polk v. Denver Dist. Court*, 849 P.2d 23, 25 (Colo. 1993).  A court abuses its discretion when its ruling is (1) based on an erroneous understanding or application of the law; or (2) manifestly arbitrary, unreasonable, or unfair.  *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011).

¶ 26    C.R.C.P. 15(a) generally establishes that a court shall freely give leave to amend "when justice so requires."  However, C.R.C.P. 15(a)'s requirement of liberal leave to amend is not without limits.  *Polk*, 849 P.2d at 25.  In evaluating a motion for leave to amend, a trial court must consider the totality of the circumstances, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Id.* at 25-26 (quoting *Varner v. Dist. Court*, 618 P.2d 1388, 1390 (Colo. 1980)).

¶ 27    While a delay in the litigation alone is not reason enough to deny leave to amend, denial is proper in circumstances including where numerous delays have already occurred, the proposed amendment is not tendered until shortly before trial, and no

12

justification appears for further delay in bringing the litigation to an end. *Id.* at 26.

## B. Discussion

¶ 28　In its order denying the Francis parties leave to amend, the trial court noted that the motion was submitted after the discovery deadline and only a few months before trial. The court further reasoned that the case had been pending for more than five years and the Francis parties had already amended the complaint five times during which they could have added the newly asserted claim.

¶ 29　The court did not abuse its discretion in denying leave to amend. The delayed timing of the proposed amendment, the length of time the case had already been pending, and the Francis parties' failure to explain why they could not have added a breach of fiduciary duty claim in an earlier amended complaint all support the court's decision to deny leave to amend. *See id.* at 25-26.

## IV. Denial of C.R.C.P. 59(a) Motion to Amend the Judgment Based on Failure to Join Indispensable Parties

¶ 30　Next, the Francis parties argue that the trial court erred by denying their C.R.C.P. 59(a) motion to amend the judgment based

13

on failure to join as indispensable parties the beneficiaries of the various trusts included among the Francis parties. *See* C.R.C.P. 19(a) (describing persons to be joined as parties if feasible).

¶ 31     Because a court can act after judgment to protect absent indispensable parties, *see Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Estates Owners Ass'n*, 214 P.3d 451, 454-55 (Colo. App. 2008), we reject AMCA's assertion that this issue was not preserved for our review.

¶ 32     However, we are not persuaded that the trial court erred by declining to join the additional parties. Under C.R.C.P. 19(a), a person to be joined in an action "if feasible" includes any person who is

> properly subject to service of process . . . [and]
> (1) In [whose] absence complete relief cannot
> be accorded among those already parties, or
> (2) [who] claims an interest relating to the
> subject of the action and is so situated that
> the disposition of the action in [the person's]
> absence may: (A) As a practical matter impair
> or impede [the person's] ability to protect that
> interest or (B) leave any of the [existing parties]
> subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent
> obligations by reason of [the person's] claimed
> interest.

¶ 33    The proposed additional parties were alleged to be beneficiaries of trusts. Those trusts were already parties to the action, and were represented by their respective trustees. As a matter of law, the beneficiaries' interests were sufficiently protected by the trustees' participation in the action on their behalf. *See* § 15-1-804(2)(r), C.R.S. 2016 (as the fiduciary of a trust, a trustee has the power "[t]o . . . contest, or otherwise settle claims by or against the . . . trust, . . . by compromise, arbitration, or otherwise"); *see also Fry & Co. v. Dist. Court*, 653 P.2d 1135, 1139 (Colo. 1982) (ruling that estate beneficiaries were not indispensable parties to partition action commenced by personal representative of estate); *cf. Howard v. Int'l Trust Co.*, 139 Colo. 314, 323-24, 338 P.2d 689, 693-94 (1959) (in litigation between trustee and a stranger to the trust, where trustee alleged that trust beneficiaries were indispensable parties, complete adjudication was had despite non-joinder of beneficiaries).

¶ 34    Therefore, the beneficiaries' absence in their individual capacities did not "impair or impede" a complete adjudication of the parties' rights. C.R.C.P. 19(a); *see also* § 15-1-509, C.R.S. 2016 (as

15

fiduciaries, trustees have a duty to act reasonably in managing trusts and to act in the interests of the beneficiaries).

## V. The Francis Parties' Other Contentions

¶ 35     The Francis parties raise multiple additional appellate issues. These are based on the court's denials of their pretrial motions for summary judgment. But because the Francis parties proceeded to a bench trial on the merits and did not renew at trial the arguments raised in their summary judgment motions, they failed to preserve these arguments for appeal. *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1249-51 (Colo. 1996); *cf. Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 44 (in jury trial, failure to properly preserve an argument in motion for directed verdict operates as abandonment and waiver of issue previously raised in motion for summary judgment).

## VI. Attorney Fees

¶ 36     AMCA requests an award of appellate attorney fees under C.A.R. 38, asserting numerous grounds.

¶ 37     To the extent they seek attorney fees under sections 38-33.3-123 and -209.5, C.R.S. 2016 — CCIOA provisions relating to failure to timely pay assessments or any sums due to AMCA —

given our resolution of this appeal, it is unclear to us whether any assessments or other sums are due from the Francis parties to AMCA. Pursuant to C.A.R. 39.1, we therefore remand the case to the trial court to determine whether any such assessments are due, and to determine whether any attorney fees are owed by the Francis parties to AMCA in connection with this appeal.

¶ 38     We deny AMCA's request for an award of attorney fees based on the Francis parties' asserted failure to timely transmit the trial court record and based on the assertion that the Francis parties filed a frivolous appeal.

## VII.  Conclusion

¶ 39     The trial court's January 4, 2013, order partially granting AMCA's motion for a determination of law is reversed and the case is remanded for further proceedings. On remand, the trial court must declare invalid the amendment to the declaration to the extent it reallocated ownership interests in the common elements. The court must reconsider the propriety of the September 8, 2015, judgment and decree of foreclosure against the Francis parties in light of this disposition. The court must also consider whether any unpaid assessments are owed by the Francis parties, and, if so,

17

whether appellate attorney fees are to be paid by the Francis parties to AMCA under sections 38-33.3-123 and 38-33.3-209.5.  In all other respects, the judgment is affirmed.

CHIEF JUDGE LOEB and JUDGE FURMAN concur.