Dorothy McCORD, Plaintiff–Appellee,

v.

**AFFINITY INSURANCE GROUP, INC., Defendant–Appellant.**

No. 99CA2118.

Colorado Court of Appeals, Div. II.

Sept. 28, 2000.

Shawn E. McDermott, Denver, Colorado, for Plaintiff–Appellee.

Burg Simpson Eldredge & Hersh, P.C., Kieth Van Doren, Diane Vaksdal Smith, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL. *

Defendant, Affinity Insurance Group, Inc., (Affinity) appeals the summary judgment entered in favor of plaintiff, Dorothy McCord. We affirm in part, reverse in part, and remand with directions.

The facts are not in dispute. Plaintiff's mother (decedent), who was living with plaintiff at the time, was killed in a single-car accident. Plaintiff's sister, who was driving the car involved in the accident with the permission of its owner, was also killed. The owner's and driver's liability insurers, apparently not disputing coverage, liability, or the amount of damages, each paid its policy limit of $25,000, a total of $50,000, to the decedent's heirs. The payments were made in unequal shares pursuant to an agreement among the heirs, and plaintiff received $20,500.

Plaintiff then demanded additional compensation from Affinity, which had issued a policy to her, and from Nationwide Insurance Company (Nationwide), which had issued a policy to the decedent, pursuant to the uninsured and underinsured motorist (UM) coverage provided by each policy. The decedent was an insured under plaintiff's policy with Affinity because she was a resident relative,

and likewise, plaintiff was an insured under decedent's Nationwide policy. The Nationwide policy had a limit of $25,000 for UM coverage, and plaintiff's policy with Affinity had a limit of $50,000 for such coverage.

Nationwide acquiesced in plaintiff's demand, did not dispute liability, coverage, or the amount of damages, and concluded that its liability under its UM coverage was for one-third of the combined policy limits of the two applicable policies ($75,000 ÷ 3 = $25,000), less a proportional (⅓) offset for the amount plaintiff had already received. Accordingly, after deducting one-third of the amount received by plaintiff from the two liability carriers ($20,500 ÷ 3 = $6,833) from its policy limits of $25,000, Nationwide paid plaintiff $18,167 under its UM coverage.

Affinity denied coverage and liability, asserting that the two UM policies could not be stacked to determine that the vehicle had been underinsured, claimed an offset for the full amount paid to the decedent's heirs, and asserted that plaintiff was not the proper party to make a claim on behalf of the decedent.

Plaintiff then brought this declaratory judgment action, seeking a determination that there was coverage under the Affinity policy in an amount up to $50,000. Affinity moved to dismiss the action under C.R.C.P. 12(b)(5), asserting that the complaint did not state a claim for which relief could be granted. Plaintiff responded with a motion for summary judgment.

The trial court determined that there were no genuine issues of material fact, disagreed with Affinity's arguments, agreed with plaintiff that there was coverage, and entered summary judgment in favor of plaintiff for $36,333 ($50,000 minus ⅔ of $20,500). Affinity now appeals from that judgment on several grounds.

## I.

■ Summary judgment is a drastic remedy and should be granted only upon a clear showing that there are no genuine issues of

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988). Because it presents a question of law, we review a summary judgment *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

## II.

Affinity first contends that plaintiff lacks standing to bring her claim because she is not the personal representative of the decedent's estate and is but one of decedent's heirs for purposes of the wrongful death statute. We disagree.

## A.

Affinity first argues that plaintiff's claim could only be brought by the personal representative of the decedent's estate. We are not persuaded.

After a person's death, two types of claims may be brought against the person or persons who caused the death. Statutorily defined and limited damages are available to certain enumerated persons under the wrongful death statutes. *See* §§ 13–21–201 through 13–21–206, C.R.S.2000. In addition, the personal representative of the estate may bring a claim for other, specified damages on behalf of the estate pursuant to the survival of claims statute. *See* § 13–20–101, C.R.S. 2000.

Affinity misconstrues the nature of plaintiff's underlying claim, which is plainly based upon the wrongful death statutes and allegations that her now deceased sister wrongfully caused their mother's death. Plaintiff is not asserting a claim for coverage under Affinity's policy based upon the survival statute.

■ If the decedent is unmarried at the time of death, as was decedent here, a wrongful death claim may be brought "by the heir or heirs of the deceased." Section 13–21–201(1)(a)(IV), C.R.S.2000. The phrase "heir or heirs" in this context means the lineal descendents of the deceased. *Whitenhill v. Kaiser Permanente,* 940 P.2d 1129 (Colo.App.1997).

■ Therefore, because it is undisputed that plaintiff is a lineal descendent of the decedent, plaintiff has standing to assert a wrongful death claim for the death of her mother, in which claim the personal representative of the mother's estate has no interest.

## B.

Affinity further contends, however, that, even if plaintiff's underlying claim is in the nature of a wrongful death claim, she may not assert a claim under the UM provisions of its policy because only the decedent, and not plaintiff, is the insured party for purposes of UM coverage under these circumstances. Again, we are not persuaded.

Section 10–4–609(4), C.R.S.2000, provides in pertinent part that:

Uninsured motorist coverage shall include coverage for damage for bodily injury *or death* which *an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.* (emphasis added)

■ This statute, then, requires UM coverage to include coverage for damages that "an insured is legally entitled to collect from the owner or driver of an underinsured vehicle," under any legal theory of recovery, resulting from bodily injury or death. While Affinity would have us read into the statute an implicit requirement that the insured who is entitled to collect damages must be the same person who suffered the bodily injury or death, the statute contains no such requirement, and because it is unambiguous, we must apply it as it is written. *See Vaughan v. McMinn,* 945 P.2d 404 (Colo. 1997).

Here, the statute conditions an insured's right to collect UM benefits only on that insured's legal entitlement to collect damages for bodily injury or death suffered by *an* insured. *See Farmers Insurance Exchange v. Chacon,* 939 P.2d 517 (Colo.App.1997) (neither the statute nor the policy language at issue required coverage for derivative claims by children upon the death of their mother who was not an insured under a UM policy); *Kline v. American States Insurance Co.,* 924 P.2d 1150 (Colo.App.1996).

■ The wrongful death statute creates a legal entitlement for a surviving spouse and

other heirs to collect damages from a tortfeasor, separate and distinct from any tort claim of the decedent that may survive. Clearly, therefore, the persons enumerated in the wrongful death statutes are persons entitled to collect damages as a result of a death caused by an uninsured or underinsured motorist. Hence, because plaintiff here is an insured under the Affinity policy, she is a proper party under § 10–4–609(4) to assert a claim under that policy's UM coverage.

### C.

■ Affinity also contends that plaintiff may not, individually, bring a claim for unrecovered wrongful death damages because such a wrongful death claim properly belongs to all the heirs jointly. Again, we are not persuaded.

The question whether the other heirs would be proper or necessary parties in an action to recover under the wrongful death statute is irrelevant to our consideration of the claim asserted here. The claim asserted by plaintiff is for benefits allegedly payable under the Affinity policy. And, decedent's other heirs are not insured under the Affinity policy. Thus, they have no interest in, and they would, therefore, lack standing to assert, a claim for UM coverage in this declaratory judgment action.

Accordingly, we conclude that plaintiff may assert a claim for coverage under the Affinity policy for her own losses, in her own name, without joining the other heirs as necessary parties.

### III.

Affinity next contends that the vehicle driven by plaintiff's sister was not underinsured within the meaning of its policy and the statute and that, therefore, there is no coverage under the express terms of the UM provisions of the policy. We disagree.

Section 10–4–609(4) provides in pertinent part that:

An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons *other than an insured* in the accident to less than the limits of uninsured motorist coverage under the insured's policy. (emphasis added)

Affinity's policy issued to plaintiff contains similar provisions, and it appears that Affinity's policy intends to provide the minimum UM coverage required by statute. *See Farmers Insurance Exchange v. Dotson,* 913 P.2d 27 (Colo.1996) (an insurance policy provision that dilutes, conditions, or limits statutorily mandated minimum coverage is, to that extent, void as against public policy).

■ Plaintiff concedes that the phrase "limits of liability for bodily injury or death under such insurance" in § 10–4–609(4) refers to the total amount payable under all applicable liability insurance policies, and we will, therefore, assume, without deciding the issue, that the statute requires the "stacking" of the applicable liability insurance policy limits to determine whether UM coverage applies. *See Carlisle v. Farmers Insurance Exchange,* 946 P.2d 555 (Colo.App.1997) (giving effect to a policy provision requiring such aggregation).

Such a construction is fully consistent with the policy of the UM statute "to place the insured in the same position as if the underinsured's coverage included liability limits equal to that of the insured." *Prudential Property and Casualty Insurance Co. v. La-Rose,* 919 P.2d 915, 917 (Colo.App.1996). Here, then, the two applicable liability policies, each with a limit of $25,000, provided a total coverage of $50,000.

The statute requires a two-part analysis to determine if a vehicle is underinsured. First, under plaintiff's concession, if the combined total of all applicable liability insurance policy limits is less than the facial limits of the UM policy, the vehicle is underinsured with respect to that UM policy. Alternatively, if the combined total of all applicable liability insurance policy limits, less all payments made to "persons other than an insured in the accident," is less than the UM

policy limits, the vehicle is likewise underinsured.

Here, the two liability policies insuring the vehicle had a combined total coverage of $50,000 for bodily injury to any one person, and the Affinity UM coverage also has a policy limit of $50,000. Because the combined total of all of the applicable liability insurance policy limits is equal to the Affinity UM policy limit, the parties agree that only the statutory alternative is the applicable test.

The liability carriers' payments of $29,500 to the decedent's other heirs ($50,000 total limits, less $20,500 paid to plaintiff) constituted payments made to "persons other than an insured in the accident," which, when deducted from the combined total liability coverage ($50,000), results in an effective combined liability policy limit of $20,500 with respect to both the Nationwide and Affinity UM policies at issue here. *See Kline v. American States Insurance Co., supra.*

Hence, even without stacking the UM policies to determine if there is coverage, the Nationwide coverage for $25,000 and the Affinity coverage for $50,000 each exceeds the combined effective policy limits of the liability insurance applicable to the vehicle. We conclude, therefore, that the vehicle was underinsured with respect to each policy. Accordingly, we need not reach Affinity's assertion that the UM policies cannot be stacked for purposes of determining if the vehicle involved was underinsured.

## IV.

Affinity also contends that, under the terms of its policy, it is entitled to offset against its policy limit of $50,000 both the full $50,000 paid to all of the heirs, rather than only the $20,500 paid to plaintiff, as well as the $18,167 paid to plaintiff under the Nationwide UM coverage. We conclude that it is not entitled to either claimed offset.

## A.

Section 10–4–609(5), C.R.S.2000, provides that:

The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the *amount paid to the insured* by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered. (emphasis added)

In contrast, Affinity's policy provides that the limit of its UM coverage is to be reduced by all sums:

Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. . . .

█ Affinity argues that the decedent, who actually sustained the bodily injuries at issue here, is the insured for purposes of determining the maximum liability under the policy. Plaintiff, on the other hand, maintains that she is the "insured" for purposes of her claim for UM coverage under the Affinity policy. For the reasons previously stated, we agree with plaintiff.

█ Affinity's policy language with respect to the offsets to be made against its limits purports to include as such offsets all amounts paid to *anyone* "by or on behalf of persons or organizations who may be legally responsible" for the bodily injury at issue. However, if applied in this manner, this provision would allow a maximum offset in excess of that authorized by § 10–4–609(5). We must, therefore, apply the statute, rather than the more restrictive policy language, to determine the extent of plaintiff's coverage. *See Farmers Insurance Exchange v. Dotson, supra.*

█ Section 10–4–609(5)(b), C.R.S.2000, cannot be applied in this declaratory judgment action because, as we explain below, the amount of damages sustained by plaintiff has not been determined and is not at issue here. At this stage of the proceedings, then, to ascertain Affinity's maximum liability we need only determine "the amount paid *to the insured* by or for any person or organization who may be held legally liable for the bodily injury." Section 10–4–609(5)(a), C.R.S.2000 (emphasis added).

The person who may be held legally liable for the wrongful death of the decedent is

plaintiff's deceased sister, who was driving the car at the time of the accident. *See* §§ 13–21–201 and 13–21–202, C.R.S.2000. The payment to plaintiff of $20,500 by the two liability insurers constitutes a payment made to "the insured" (plaintiff) on behalf of the person legally liable for the bodily injury, and that amount may be offset against the UM coverage under plaintiff's policy. The payments made to the decedent's other heirs, totaling some $29,500, were *not* payments made to "any insured" under Affinity's policy and, thus, may not be used as offsets for determining Affinity's maximum liability under its UM policy. *Kline v. American States Insurance Co., supra.*

### B.

■ Affinity next argues that, because Nationwide under its UM coverage was "legally liable" to pay benefits to plaintiff, § 10–4–609(5)(a) required that the payment made by it be offset against Affinity's liability under its UM coverage. We conclude that the pertinent statute does not allow such an offset.

As noted, § 10–4–609(5)(a) provides that the maximum liability of a UM carrier is:

> The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held *legally liable for the bodily injury* .... (emphasis added)

However, Nationwide, the other UM carrier, was not "liable for the bodily injury [death]" of the decedent. This phrase refers only to the tortfeasor who causes such injury or death.

Indeed, § 10–4–609(1)(a), C.R.S.2000, specifically notes that UM coverage insures "against *loss* resulting from liability *imposed by law* for bodily injury or death ...." (emphasis added) Nationwide's liability here was not "imposed by law"; it was imposed pursuant to a contract of insurances between decedent and Nationwide. And, that contract insured against a loss resulting from bodily injury or death arising from the ownership, maintenance, or use of a motor vehicle and caused by someone legally liable for such bodily injury or death.

Likewise, § 10–4–609(4) provides that UM coverage is to pay "for damage ... which an insured is entitled to collect from *the owner or driver* of an underinsured motor vehicle." (emphasis added) Nationwide neither owned nor drove the vehicle in which decedent died.

The prior decisions relied upon by Affinity, *Alliance Mutual Casualty Co. v. Duerson,* 184 Colo. 117, 518 P.2d 1177 (1974); *Carlisle v. Farmers Insurance Exchange, supra;* and *Farmers Insurance Exchange v. Walther,* 902 P.2d 930 (Colo.App.1995), have no relevance upon this issue. None of them purported to interpret § 10–4–609(5)(a) in the manner suggested by Affinity. Rather, each merely held that no part of the uninsured motorist statute, as it then existed, invalidated a policy provision which itself called for an offset against the UM limits for payments made by another UM carrier.

### V.

Affinity also argues that its policy was merely excess to the coverage provided by Nationwide, and consequently, it was improper to allow Nationwide to reduce its UM limits by offsetting a proportionate share of the $20,500 paid to plaintiff by the liability carriers.

However, this issue was not raised by Affinity in the trial court, nor did it contend that plaintiff could not collect under *both* the Nationwide and the Affinity policies. On the contrary, Affinity specifically conceded before the trial court that:

> [B]ased on its commonsense (sic) form, stacking refers to the ability of an insured to make separate recoveries under multiple policies. In the instant case, for example, decedent ... was an insured under both the Affinity and Nationwide policies. To the extent that the vehicle she was occupying was underinsured, she could recover under both policies since they were insured by separate insurers. C.R.S. § 10–4–609(2).

Hence, when the trial court determined, as we have also determined, that the vehicle in which decedent was riding was underinsured, it ruled that plaintiff was entitled to receive payment from both Nationwide and from Af-

finity. And, because Affinity had not raised the issue, the trial court did not pass upon the question whether the amount previously paid by Nationwide was based upon a proper offset.

█ Affinity has no cause to complain because the trial court acted consistently with its concession. *See Digby v. Denner,* 156 Colo. 260, 398 P.2d 30 (1965). And, because the propriety of the offsets taken by Nationwide was not an issue presented to the trial court, we will not address that issue. *See Public Service Co. v. Willows Water District,* 856 P.2d 829 (Colo.1993).

### VI.

█ Finally, Affinity contends that the trial court erred by entering a money judgment. With this contention we agree.

Affinity argues, plaintiff concedes, and we agree, that the trial court could not award damages because plaintiff sought only a declaration of coverage and no evidence was presented to establish that the decedent was damaged in an amount that exceeds the amount that she has already received.

█ Further, the parties agree that the amount of damages is subject to arbitration pursuant to Affinity's policy. If an enforceable agreement requires arbitration of a claim, a court lacks subject matter jurisdiction to consider that issue. *Klein v. State Farm Mutual Automobile Insurance Co.,* 948 P.2d 43 (Colo.App.1997). Accordingly, the court erred in awarding damages to plaintiff.

The judgment for money damages is reversed, but the remainder of the judgment and decree is affirmed, and the cause is remanded to the trial court to enter its decree declaring that the Affinity policy will provide UM coverage to plaintiff up to $36,-333.

Judge TAUBMAN and Judge NIETO concur.