The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

## 2019COA93

**No. 18CA1067, *Ferguson v. Spalding Rehabilitation* —
Wrongful Death; Damages for Death by Negligence — Damages
for Death — Recovery by Heir or Heirs of the Deceased**

A division of the court of appeals holds that an adult adoptee
is a "lineal descendant" of the adoptive parent and therefore an
"heir" of that parent within the meaning of section 13-21-
201(1)(b)(I)(B), C.R.S. 2018, of the Wrongful Death Act.  Thus, an
adult adoptee can assert a wrongful death claim on behalf of the
decedent parent in the second year after that person's death.

COLORADO COURT OF APPEALS                                    **2019COA93**

Court of Appeals No. 18CA1067
City and County of Denver District Court No. 17CV33101
Honorable Brian R. Whitney, Judge

Marty Ferguson, individually and as Personal Representative of the Estate of
Ann Marilyn Ferguson, deceased,

Plaintiff-Appellant,

v.

Spalding Rehabilitation, LLC; Sundeep Viswanathan, M.D.; Orhan Sancaktar,
M.D.; Jason D. Dewees, M.D.; Aleksandra Basheer Kamal, M.D.; Maryann
Bucani-Go, M.D.; Thomas A. Haffey, D.O.; and Bakorp LLC, d/b/a Pacific
Mobile Diagnostics,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE J. JONES
Román and Lipinsky, JJ., concur

Announced June 20, 2019

Wormington & Bollinger, Edwin P. Krieger, McKinney, Texas, for Plaintiff-
Appellant

Hall Prangle & Schoonveld, LLC, Jacqueline B. Sharuzi-Brown, Todd J.
Stalmack, Donna Bakalor, Denver, Colorado, for Defendants-Appellees
Spalding Rehabilitation, LLC; Sundeep Viswanathan, M.D.; and Orhan
Sancaktar, M.D.

Jaudon & Avery LLP, David H. Yun, Jared R. Ellis, Denver, Colorado, for
Defendants-Appellees Jason D. Dewees, M.D.; Aleksandra Basheer Kamal,
M.D.; Maryann Bucani-Go, M.D.; and Thomas A. Haffey, D.O.

Gordon & Rees LLP, John R. Mann, Thomas B. Quinn, Heather M. Gwinn Pabon, Denver, Colorado, for Defendant-Appellee Bakorp LLC

¶ 1     Section 13-21-201(1)(b)(I)(B), C.R.S. 2018, a part of the Wrongful Death Act (WDA), says that a wrongful death suit may be brought in the second year after a decedent's death "[b]y the heir or heirs of the deceased."  But is a person adopted as an adult by the decedent considered the decedent's "heir" under this provision of the WDA?  The district court answered this question "no," and therefore dismissed plaintiff Marty Ferguson's negligence lawsuit against various medical professionals and providers — a lawsuit that she brought on behalf of her late, adoptive parent, Ann Marilyn Ferguson.[1]  We, however, answer this question "yes," and therefore reverse the district court's judgment.

## I.     Background

¶ 2     Ann and Jim Ferguson adopted Marty in 1995 when Marty was twenty-five years old.  Ann died in October 2015 after being examined or treated by defendants.  (Jim had died some time before.)

---

[1] Because plaintiff and decedent share the same last name, we refer to them as Marty and Ann, without intending any disrespect.

¶ 3      Marty's complaint alleges that defendants, Spalding Rehabilitation, LLC; Sundeep Viswanathan, M.D.; Orhan Sancaktar, M.D.; Jason D. Dewees, M.D.; Aleksandra Basheer Kamal, M.D.; Maryann Bucani-Go, M.D.; Thomas A. Haffey, D.O.; and Bakorp LLC, d/b/a Pacific Mobile Diagnostics, caused Ann's death by failing to properly diagnose and treat her illness. Defendants moved to dismiss under C.R.C.P. 12(b)(5), contending that Marty doesn't have standing to file a wrongful death suit on Ann's behalf because an adult adoptee isn't an "heir" within the meaning of the WDA. After converting the motion to dismiss into a motion for summary judgment, the court granted the motion, agreeing with defendants' position that Marty isn't an "heir" as that term is used in section 13-21-201(1)(b)(I)(B). The court also ruled that Marty isn't Ann's "designated beneficiary," *see* §§ 15-22-101 to -112, C.R.S. 2018, a different status that would allow Marty to sue on Ann's behalf under the WDA. *See* § 13-21-201(1)(b)(I)(D).

## II.    Discussion

¶ 4      Marty raises two issues on appeal. First, she challenges the district court's ruling that because, as an adult adoptee, she's not an heir within the meaning of section 13-21-201(1)(b)(I)(B), she

2

doesn't have standing to sue under the WDA. Second, she contends that the district court erred in finding that she isn't Ann's designated beneficiary under the WDA.

¶ 5    Because we conclude that Marty is an heir with a right to sue on Ann's behalf under the WDA, we don't address her second contention.

## A.    Standard of Review

¶ 6    As noted, defendants labeled their motion as one under Rule 12(b)(5), and the district court treated it as one under C.R.C.P. 56 because the parties submitted evidence outside the complaint (which the court considered). *See* C.R.C.P. 12(b). But because the motion challenged Marty's standing, it was really one under Rule 12(b)(1) contesting the district court's subject matter jurisdiction. *See Hansen v. Barron's Oilfield Serv., Inc.*, 2018 COA 132, ¶ 7. This is so even though the court considered evidence outside the complaint. *See* 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.30[3], at 12-42 (3d ed. 2015); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 159-60 (3d ed. 2004).

¶ 7    Whether a party has standing is a legal question that we review de novo. *Hansen*, ¶ 8. And while we review a district court's factual findings for clear error and its legal conclusions de novo when considering an order under Rule 12(b)(1), *id.*, when, as in this case, the relevant facts aren't disputed, our review is entirely de novo, *see Asphalt Specialties Co. v. City of Commerce City*, 218 P.3d 741, 744 (Colo. App. 2009); *Hansen v. Long,* 166 P.3d 248, 250-51 (Colo. App. 2007).

¶ 8    Resolving this case turns on the meaning of statutes. We also decide such questions de novo. *Hansen*, ¶ 9; *Traer Creek-EXWMT LLC v. Eagle Cty. Bd. of Equalization,* 2017 COA 16, ¶ 8.

### B.    Applicable Law

¶ 9    The WDA says that in the second year after the death of a person, the "heir or heirs of the deceased" may sue to recover on behalf of a decedent who died from an injury caused by another's negligence. §§ 13-21-201(1)(b)(I)(B), -202, -203(1)(a), C.R.S. 2018. But because the WDA doesn't define the term "heir," we must turn to familiar principles of statutory interpretation to determine the term's meaning.

4

¶ 10    Of course, we strive to discern and give effect to the General

Assembly's intent.  *Traer Creek*, ¶ 9; *Krol v. CF & I Steel*, 2013 COA

32, ¶ 15.

> We look first to the statutory language, giving
> the words and phrases used therein their plain
> and ordinary meanings.  We read the language
> in the dual contexts of the statute as a whole
> and the comprehensive statutory scheme,
> giving consistent, harmonious, and sensible
> effect to all of the statute's language.

*Krol*, ¶ 15 (citation omitted).  If, after doing this, we conclude that

the statute isn't ambiguous, we enforce it as written without

resorting to other rules of statutory interpretation.  *Id.*  But if we

conclude otherwise, we may consider other indicators of legislative

intent.  *See* § 2-4-203, C.R.S. 2018; *Bd. of Cty. Comm'rs v. Costilla

Cty. Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo. 2004).

## C.    Analysis

¶ 11    The commonly understood meaning of the word "heir" is "a

person who inherits real or personal property."  *Allen v. Pacheco*, 71

P.3d 375, 380 (Colo. 2003) (quoting Black's Law Dictionary 727 (7th

ed. 1999)); *see also* § 15-10-201(24), C.R.S. 2018 (defining "heirs"

for purposes of the Colorado Probate Code as "persons . . . who are

entitled under the statutes of intestate succession to the property of

5

a decedent"); *Binkley v. Switzer,* 75 Colo. 1, 3, 223 P. 757, 758 (1924) ("[T]he word 'heir' includes such persons as would take under the statute of descent and distribution."); Black's Law Dictionary 839 (10th ed. 2014) (defining "heir" as "[s]omeone who, under the laws of intestacy, is entitled to receive an intestate decedent's property"); Webster's Third New International Dictionary 1050 (2002) (defining "heir" as "one who inherits or is entitled to succeed to the possession of property after the death of its owner"). And that appears to have been the commonly understood meaning of the word when way back in the 1870s the General Assembly adopted the first iteration of the WDA, which included the phrase "by the heir or heirs of the deceased," G.L. 1877, § 877. *See* Black's Law Dictionary 565 (1st ed. 1891) (defining "heir" as "[a] person who succeeds, by the rules of law, to an estate in lands, tenements, or hereditaments, upon the death of his ancestor, by descent and right of relationship").

¶ 12    Is an adult adoptee, such as Marty, an "heir" under this commonly understood meaning?  Most certainly.  Such an adoptee is an "heir at law . . . entitled to inherit from the [person adopting the adult] in all respects as if such adopted person had been the

6

[adoptive parent's] child born in lawful wedlock." § 14-1-101(2), C.R.S. 2018.[2] Indeed, defendants don't dispute that Marty is an heir as the word is commonly understood.

¶ 13    Given the principles of statutory interpretation recited above, that might seem to be the end of the matter. But it isn't.

¶ 14    In 1897, the supreme court, looking to the whole of the WDA, held that "heir or heirs" in the WDA means only "lineal descendants" — the "child or children" of the deceased. *Hindry v. Holt*, 24 Colo. 464, 466-67, 51 P. 1002, 1003-04 (1897). Ever since then, Colorado courts have applied *Hindry*'s interpretative gloss to cases brought by a variety of claimed heirs under the WDA. *E.g.*, *McGill v. Gen. Motors Corp.*, 174 Colo. 388, 389-91, 484 P.2d 790, 790-91 (1971) (parents of deceased not lineal descendants entitled to sue under the WDA); *Blom v. United Air Lines, Inc.*, 152 Colo. 486, 487-88, 382 P.2d 993, 994-95 (1963) (sister not a lineal descendant); *Martin v. Cuellar*, 131 Colo. 117, 118, 121-22, 279

_____

[2] True, section 14-1-101(2), C.R.S. 2018, uses the term "heir at law" rather than "heir." But the commonly understood meanings of those terms appear to be the same. *See* Black's Law Dictionary 839 (10th ed. 2014); Black's Law Dictionary 565-66 (1st ed. 1891).

P.2d 843, 843-45 (1955) (adoptive mother of deceased adult adoptee not a lineal descendant); *McCord v. Affinity Ins. Grp., Inc.*, 13 P.3d 1224, 1227 (Colo. App. 2000) (daughter of deceased was a lineal descendant); *Ablin v. Richard O'Brien Plastering Co.*, 885 P.2d 289, 290-92 (Colo. App. 1994) (brother and sister of deceased not lineal descendants).

¶ 15    So to answer the dispositive question whether Marty is an heir under the WDA, we must decide whether an adult adoptee is a "lineal descendant" of a decedent.

¶ 16    Lineal descendants are a subset of heirs.  That subset is first limited to heirs who are "lineal" — that is, "in a line; especially a direct line, as from father to son."  Black's Law Dictionary 724 (1st ed. 1891); *see Rocky Mountain Fuel Co. v. Kovaics*, 26 Colo. App. 554, 556, 144 P. 863, 865 (1914) ("A lineal heir is one who inherits in line either ascending or descending from the common source as distinguished from a collateral heir.").  It is also limited to heirs who are "descendants": a descendant is "[o]ne who is descended from another; a person who proceeds from the body of another, such as a child, grandchild, etc., to the remotest degree."  Black's Law Dictionary 359 (1st ed. 1891).  Combining these two limitations, we

8

arrive at the following meaning of lineal descendant: "[o]ne who is in the line of descent from the ancestor." Black's Law Dictionary 531 (4th ed. 1951); *accord* Black's Law Dictionary 445 (6th ed. 1990); *see also* Black's Law Dictionary 539 (10th ed. 2014) ("A blood relative in the direct line of descent. ● Children, grandchildren, and great-grandchildren are lineal descendants."). This meaning is plainly what the *Hindry* court had in mind, as it equated "children" with "lineal descendants." 24 Colo. at 466, 51 P. at 1003.

¶ 17 Our conclusion on this point advances the ball, but we're still not over the goal line. Now we must answer a subsidiary question: Is an adult adoptee a person in the direct line of descent from the adoptive parent? We answer this question "yes" for two dependent reasons and a third independent reason.

¶ 18 First, the term lineal descendant has been historically understood to include adopted children. *See* Black's Law Dictionary 445 (6th ed. 1990); Black's Law Dictionary 531 (4th ed. 1951); *see also In re Cadwell's Estate,* 186 P. 499, 500-01 (Wyo. 1920) (an adopted child is a "lineal descendant"). Colorado's statutes pertaining to intestate succession reflect that understanding. § 15-10-201(11) ("descendant" includes all "lineal

9

descendants of all generations, with the relationship of parent and child at each generation" determined as set forth in the Probate Code); § 15-11-103, C.R.S. 2018 (dictating when "descendants" share in an intestate estate); § 15-11-116, C.R.S. 2018 (with exceptions not relevant in this case, "if a parent-child relationship exists . . . the child is a child of the parent for the purpose of intestate succession"); § 19-5-211(1), C.R.S. 2018 ("After the entry of a final decree of adoption, the person adopted is, for all intents and purposes, the child of the [adopting parent].").

¶ 19    Second, section 14-1-101 places persons adopted as adults on the same footing as persons adopted as children, indeed, as natural born children, for purposes of intestate succession.  It says that an adult adoptee is "entitled to inherit from the [adoptive parent] any property in all respects as if such adopted person had been the [adoptive parent's] child born in lawful wedlock."  § 14-1-101(2).  As we have seen, it is the right to inherit as a direct line descendant that makes one a "lineal descendant."  Adopted children, including adults adopted under section 14-1-101, have that right: they are children of a descendant for purposes of intestate succession.

¶ 20    And third, deeming an adult adoptee a lineal descendant of a decedent comports with *Hindry*'s rationale.  The *Hindry* court reasoned that "heirs" are limited to lineal descendants in part because the WDA seeks to limit recovery to those individuals most likely to suffer pecuniary loss as a result of a decedent's death.  24 Colo. at 466-67, 51 P. at 1003; *see also McGill*, 174 Colo. at 391, 484 P.2d at 791; *Ablin*, 885 P.2d at 291.  As a direct descendant of Ann by law, Marty is such an individual: she is one who would have derived "pecuniary benefit from the continuance of the life of [the] deceased," *Hindry*, 24 Colo. at 466, 51 P. at 1003, through the continued building up of Ann's estate.

¶ 21    Urging a contrary conclusion, defendants rely on several cases, all of which we conclude are distinguishable.

¶ 22    *Martin* concerned a claim by the adoptive mother of the decedent, whom the mother had adopted when the decedent was an adult.  The court held that the predecessor statute to section 14-1-101 didn't give adopting parents the status of father or mother under the WDA.  131 Colo. at 119-22, 279 P.2d at 844-45.  But as discussed, section 14-1-101 does give *the adoptee* the status of a lineal descendant.

¶ 23    *Ablin* holds only that a brother of a decedent is a collateral descendant, not a lineal descendant of the decedent.  The division rejected the brother's argument that amendments to the WDA had, in effect, abrogated the court's decision in *Hindry*.  885 P.2d at 290-92.

¶ 24    In *Herrera v. Glau*, the division declined to extend the meaning of lineal descendant to the decedent's stepbrother.  After the decedent's death, a probate court ruled that the stepbrother had been "equitably adopted" by the decedent.  772 P.2d 682, 683-84 (Colo. App. 1989).  Whatever the merits of that decision, it didn't involve, as this case does, a statute expressly making the adoptee a lineal descendant of a decedent.[3]

¶ 25    To sum up, we hold that an adult adoptee is a lineal descendant of a decedent, and therefore an "heir" as that term, as construed in *Hindry*, is used in section 13-21-201(1)(b)(I)(B).  It

---

[3] Certain defendants also cite *Brunton v. International Trust Co.*, 114 Colo. 298, 164 P.2d 472 (1945), for the proposition that adopted children aren't lineal descendants.  But that case only interpreted the particular language of a trust document; it didn't announce a broader rule.

follows that the district court erred in concluding to the contrary and dismissing Marty's complaint.

### III.   Defendants' Requests for Attorney Fees

¶ 26    Because we have concluded that the judgment must be reversed, we necessarily deny defendants' requests for attorney fees incurred on appeal under section 13-17-201, C.R.S. 2018.

### IV.   Conclusion

¶ 27    The judgment is reversed, and the case is remanded for further proceedings.

JUDGE ROMÁN and JUDGE LIPINSKY concur.