22CA0169 Pennington v Go In Pro 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0169
El Paso County District Court No. 19CV32187
Honorable Gregory R. Werner, Judge

---

Brian C. Pennington,

Plaintiff-Appellee,

v.

Go In Pro, LLC, a Colorado limited liability company, and Nickolas Dalan
Alexander,

Defendants-Appellants.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

No Appearance for Plaintiff-Appellee

Go In Pro, LLC, Pro Se

Nickolas Dalan Alexander, Pro Se

¶ 1 Defendants, Go In Pro, LLC and Nickolas Dalan Alexander, appeal the district court's judgment in favor of plaintiff, Brian C. Pennington. We affirm in part and reverse in part.

## I. Background

### A. Facts

¶ 2 Go In Pro is a single-member Colorado limited liability company (LLC) owned by Alexander. Pennington was employed by Go In Pro from February 4 to May 2, 2019. Pennington's employment agreement stated that Go In Pro would pay him $4,000 bi-weekly (for an annual salary of $96,000), along with a "relocation package deposit" of $50,000 for the purchase of a property located in Olney Springs. The agreement was signed by Pennington and by Alexander on behalf of Go In Pro.

¶ 3 In January 2019, Pennington relocated from North Carolina to Colorado to work for Go In Pro. The next month, Go In Pro sent a check for $48,892.35 to a title company for the purchase of the Olney Springs property. Alexander (in his individual capacity) and Pennington were both named on the deed as the property's owners.

¶ 4 Over the next few months, Pennington made multiple complaints to Alexander about nonpayment of his earned wages.

Go In Pro then terminated its employment contract with Pennington, citing poor performance.

## B. Procedural History

¶ 5    Pennington filed claims against Alexander and Go In Pro, asserting that he was paid only $3,550 between February 4 and May 2, 2019, and that Go In Pro misrepresented its financial ability to pay him according to the terms of the employment agreement. Pennington asserted ten claims against Alexander and Go In Pro: violation of the Colorado Wage Claim Act (CWCA), sections 8-4-103(1)(a), 8-4-109(3)(b), and 8-4-109(3)(c), C.R.S. 2024 (unpaid wage claim); "luring"; fraudulent and negligent misrepresentation as to employment compensation and the relocation benefit; promissory estoppel; breach of contract; unjust enrichment; abuse of process; and outrageous conduct.

¶ 6    Alexander and Go In Pro jointly denied liability and counterclaimed for partition, alleging that Alexander and Pennington each held a one-half interest in the Olney Springs property.

¶ 7    The parties then filed cross-motions for summary judgment. The primary summary judgment issue was whether Pennington was

an employee within the meaning of the CWCA — and therefore entitled to an award of unpaid wages under that statute — or an independent contractor.

¶ 8     In its order addressing the summary judgment motions, the district court (1) concluded that Pennington was an employee of Go In Pro and not an independent contractor and (2) dismissed Pennington's claims for unjust enrichment and outrageous conduct. Pennington's remaining claims (unpaid wage claim, luring, fraudulent and negligent misrepresentation, promissory estoppel, breach of contract, and abuse of process) and Alexander and Go In Pro's partition counterclaim were set for trial.

¶ 9     After a three-day bench trial, the court (1) ruled in Pennington's favor on the unpaid wage claim, finding that Go In Pro and Alexander were jointly and severally liable for $14,594 in unpaid wages and $19,383 in statutory penalties for willful nonpayment; (2) dismissed the rest of Pennington's claims and the partition counterclaim; and (3) ordered Alexander to execute a quitclaim deed conveying the Olney Springs property to Pennington within fourteen days.

¶ 10    Alexander and Go In Pro assert that the district court erred by (1) concluding that Pennington was an employee under the CWCA; (2) determining that Alexander was jointly and severally liable for the unpaid wages and statutory penalties; (3) concluding that Pennington properly made a wage demand; and (4) ordering Alexander to quitclaim the Olney Springs property to Pennington. We address each contention in turn.

## II.    Pennington's Employee Status

¶ 11    Go In Pro[1] first contends that the district court erred by failing to apply the factors listed in subsections (1)(b) and (1)(c) of section 8-70-115, C.R.S. 2024, of the Colorado Employment Security Act (CESA) and related case law when determining Pennington's employment status.  *See Long View Sys. Corp. USA v. Indus. Claim Appeals Off.*, 197 P.3d 295 (Colo. App. 2008); *Softrock Geological Servs., Inc. v. Indus. Claim Appeals Off.*, 2012 COA 97, *aff'd*, 2014 CO 30.  We perceive no basis for reversal.

---

[1] Because Pennington was Go In Pro's employee, we refer only to that entity in this section.

## A. Standard of Review and Applicable Law

¶ 12 We review de novo a trial court's order granting or denying a motion for summary judgment. *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 16.

¶ 13 The CWCA defines an "employee" as "any person . . . performing labor or services for the benefit of an employer." § 8-4-101(5), C.R.S. 2024. Under the statute, "relevant factors in determining whether a person is an employee include the degree of control the employer may or does exercise over the person and the degree to which the person performs work that is the primary work of the employer." *Id.* A person who is "primarily free from control and direction in the performance of the service . . . and who is customarily engaged in an independent trade, occupation, profession, or business related to the service performed is not an 'employee.'" *Id.*

¶ 14 Whether an employment relationship exists is generally a question of fact. *Diamond Circle Corp. v. Blocher*, 691 P.2d 769, 770

(Colo. App. 1984). A factual issue may be resolved on summary judgment if none of the underlying relevant facts are disputed and if reasonable minds could draw only one inference from them. *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 18.

## B.    Analysis

¶ 15    Go In Pro sets forth the various CESA factors that it argues the district court should have applied when determining Pennington's status, and it asserts in a conclusory manner that Pennington is an independent contractor under those factors. However, Go In Pro doesn't explain *why* application of the CESA factors would lead to a different outcome than what the district court reached or direct us to any evidence in the record to support its arguments. And although Go In Pro argues that the district court should have evaluated Pennington and Go In Pro's relationship under the totality of the circumstances, it fails to articulate which relevant circumstances the court overlooked.

¶ 16    Further, to the extent Go In Pro argues that it was error for the district court to resolve the question of Pennington's employment status at summary judgment, that argument is also undeveloped because Go In Pro didn't explain in any detail why

6

there was a material dispute as to Pennington's status or cite any facts in the record that would support a conclusion that Pennington was an independent contractor rather than an employee. C.R.C.P. 56(c).

¶ 17    While we liberally construe filings by self-represented litigants, we cannot "invent[] arguments not made by the pro se party." *Minshall v. Johnston*, 2018 COA 44, ¶ 21. Because Go In Pro hasn't adequately developed its arguments, we won't consider them further. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 44 (declining to address undeveloped and conclusory assertions of error made without supporting argument), *aff'd*, 2021 CO 56.

### III.    Joint and Several Liability

¶ 18    Alexander contends that the district court erred by concluding that he was "jointly and severally liable" with Go In Pro for Pennington's unpaid wages because Pennington was employed solely by Go In Pro and not by Alexander. Based on the district court's factual findings in this case, we agree.

## A.     Standard of Review

¶ 19     We review a district court's factual findings for clear error, but we review de novo the court's application of the governing legal standard to the facts. *Blakeland Drive Invs., LLP IV v. Taghavi*, 2023 COA 30M, ¶ 28.

## B.     Applicable Law

¶ 20     In general, a member or manager of an LLC is not personally liable for the LLC's debts, obligations, or liabilities. § 7-80-705, C.R.S. 2024.  However, in "extraordinary circumstances" a court may pierce the corporate veil to impose personal liability on the LLC's members. *Million v. Grasse*, 2024 COA 22, ¶ 24.

¶ 21     In 2003, the Colorado Supreme Court concluded that the CWCA doesn't impose personal liability on officers or agents of a corporate entity when the corporate entity employer fails to make wage payments. *Leonard v. McMorris*, 63 P.3d 323, 333 (Colo. 2003).  The supreme court's reasoning was largely based on the then-current definition of "employer" when viewed in the context of related provisions of the CWCA, the CWCA's overarching purpose, and the lack of "evidence of specific intent by the General Assembly

8

to disregard well-established principles of corporate and agency law." *Id.*

¶ 22    In 2018, a division of this court concluded that *Leonard* did not bar a court from imposing personal liability on a corporate officer for wage claims against a corporate entity employer if the claimant successfully pierced the corporate veil. *Paradine v. Goei*, 2018 COA 55, ¶ 1.

¶ 23    In 2019 — after *Leonard* and *Paradine* were announced — the General Assembly revised the CWCA's definition of "employer" to be the same as the definition in the federal Fair Labor Standards Act of 1938: "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); Ch. 182, sec. 2, § 8-4-101(6), 2019 Colo. Sess. Laws 2058-59. Many cases interpreting this language have concluded that corporate officers or other individuals acting on behalf of corporate entities may be "employers" and, therefore, may be personally liable for unpaid wage claims brought by employees of the corporate entity. In such cases, an individual's "employer" status was based on factual findings that the individual had control over, or was highly involved in, the operational decisions of the

corporate entity or the supervision of the employee. *See, e.g.,*
*Ventura v. Bebo Foods, Inc.,* 738 F. Supp. 2d 1, 5-6 (D.D.C. 2010)
(majority owner of food and restaurant businesses personally liable
as an employer because he had "operational control" over corporate
defendants); *Moon v. Kwon,* 248 F. Supp. 2d 201, 237-38 (S.D.N.Y.
2002) (hotel president jointly and severally liable with hotel as
employer because he "played an intimate role in the day-to-day
operations of the hotel" and supervised work responsibilities and
employment conditions); *Duncan v. Perdue,* 988 F. Supp. 992, 994
(W.D. Va. 1997) (owner and chief executive officer of corporate
employer jointly and severally liable for unpaid wages because he
"dealt exclusively with the plaintiffs in regard to the terms of their
employment").

## C.    Analysis

¶ 24    Here, the district court found that Pennington is Go In Pro's
employee, but it didn't find that he was *Alexander's* employee or
that Alexander was an "employer" within the meaning of the CWCA.
And although Pennington argued briefly at trial that the district
court should pierce the corporate veil, the court apparently declined

10

to do so.[2]  Because the court didn't make any of these findings, it erred by imposing personal liability on Alexander for the unpaid wage claim.

## IV.  Wage Demand

¶ 25    Alexander and Go In Pro next argue that the district court erred by imposing a statutory penalty because Pennington didn't make a wage demand before filing his complaint.  We disagree.

### A.  Standard of Review

¶ 26    Under the circumstances of this appeal, whether Pennington made a wage demand presents a mixed question of fact and law. We review the district court's findings of fact for clear error, and we review de novo the legal conclusions that the court drew from its factual findings.  *See E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000).  To the extent that the district court's decision rested on statutory interpretation, we also review that interpretation de novo.  *See Mook v. Bd. of Cnty. Comm'rs*, 2020 CO 12, ¶ 24.

---

[2] Pennington didn't file any briefing in this appeal, and we see nothing in the record indicating that the court ruled on Pennington's veil piercing argument.

## B. Analysis

¶ 27 A terminated employee may bring a claim for "wages . . . earned, vested, determinable, and unpaid at the time of [termination]." § 8-4-109(1)(a). If an employer does not tender payment within fourteen days of an employee's written demand for unpaid wages, the employer is subject to statutory penalties. § 8-4-109(3)(b). The penalty amount is higher if a court finds that an employer's failure to pay was "willful." § 8-4-109(3)(b)(II). The statute defines "written demand" as any request "for wages or compensation from or on behalf of an employee . . . mailed or delivered to the employer's correct address." § 8-4-101(15).

¶ 28 As best we understand the arguments, Go In Pro contends that Pennington is not entitled to statutory penalties because his complaint (1) did not allege a violation of the CWCA and (2) did not allege "that [Pennington] issued a demand to either [defendant] prior to instituting a claim in court." We reject both contentions.

¶ 29 First, Pennington's complaint clearly alleged that Go In Pro violated the CWCA. Pennington's "Fifth Claim of Relief" is expressly titled, "Violation of the Colorado Wage Act." It sets forth employers'

12

statutory duty to pay all earned wages and details the amount of unpaid wages allegedly owed by Go In Pro.

¶ 30    Second, the CWCA does not require employees seeking unpaid wages to make a written demand before filing a civil action or to allege in their complaint that they have done so.  *See* § 8-4-109(3)(a).  Pennington's complaint itself meets the broad statutory definition of "written demand," which simply requires a written request for the payment of unpaid wages and the delivery of such request to the employer.  § 8-4-101(15).  Pennington's complaint says that "[t]his Complaint serves . . . as a 'written demand' that Defendants immediately tender payment of Mr. Pennington's earned but unpaid wages," and the complaint was delivered to Go In Pro.  Therefore, we conclude that Pennington met all the criteria for making a written demand and that the district court did not err by ordering Go In Pro to pay statutory penalties.

## V.    Olney Springs Property

¶ 31    Finally, Alexander contends that the district court lacked authority to order him to quitclaim the Olney Springs property to Pennington.  We conclude that additional findings and conclusions are necessary.

13

## A.    Standard of Review

¶ 32    To the extent the district court's order was based on an interpretation of the relief available under the CWCA, we review de novo the court's statutory interpretation and whether it applied the correct legal standard.  *See Ferguson v. Spalding Rehab., LLC*, 2019 COA 93, ¶ 8 (statutory interpretation); *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7 (legal standard).

¶ 33    To the extent the district court ordered the quitclaim as injunctive relief, we review its order for an abuse of discretion.  *See Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 518 (Colo. App. 2004) ("Entry or denial of injunctive relief is a discretionary decision of the [district] court that will not be disturbed on appeal absent an abuse of discretion.").  A district court abuses its discretion if its decision is "manifestly arbitrary, unreasonable, or unfair" or if it misapplies the law.  *Streu v. City of Colorado Springs*, 239 P.3d 1264, 1268 (Colo. 2010); *No Laporte Gravel Corp. v. Bd. of Cnty. Comm'rs*, 2022 COA 6M, ¶ 24.

## B.    Analysis

¶ 34    As a remedy for his claims involving the Olney Springs property — breach of contract, luring, fraudulent and negligent

14

misrepresentation, and abuse of process — Pennington requested that the district court order Alexander to remove his name from the property's deed. However, the district court ultimately dismissed those claims, along with Alexander's partition counterclaim. The only claim on which Pennington prevailed was his CWCA claim.

¶ 35 The district court did not find that the employment agreement's $50,000 relocation benefit constituted unpaid wages under the CWCA. Further, the district court's order does not cite, and we cannot find, any provision of the CWCA that grants the court authority to order relief regarding property ownership. *See* §§ 8-4-101 to -127, C.R.S. 2024. And to the extent the district court relied on some authority outside the CWCA to enter the quitclaim order, it doesn't explain what that is. Absent a finding that the $50,000 benefit was unpaid wages or another explanation as to why the district court ordered Alexander to quitclaim the property to Pennington, we are unable to determine the basis for the court's decision.

¶ 36 We therefore conclude that the district court erred by ordering Alexander to quitclaim his ownership interest in the Olney Springs property without identifying or explaining its rationale for doing so.

*See In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008) ("A trial court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision."). We reverse that portion of the district court's order and remand the case for the court to reconsider whether to enter relief related to the Olney Springs property and enter sufficient additional findings and conclusions to explain the basis for its decision.

## VI.   Disposition

¶ 37    The portion of the judgment ordering Go In Pro to pay Pennington unpaid wages and statutory penalties is affirmed.

¶ 38    The portion of the judgment finding Alexander jointly and severally liable for the unpaid wages and statutory penalties is reversed.

¶ 39    The portion of the judgment ordering Alexander to quitclaim his interest in the Olney Springs property to Pennington is reversed and remanded for proceedings consistent with this opinion.

¶ 40    The portions of the judgment unaffected by this appeal remain undisturbed.

JUDGE FOX and JUDGE GOMEZ concur.